[No. 2-39803-2.　Division Two.　October 2, 1969.]

BUD HOLTER *et al., Respondents,* v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., *Appellant.*

*Comfort, Dolack, Hansler & Billett* and *Patrick C. Comfort,* for appellant.

*Gordon, Honeywell, Malanca, Peterson & Johnson* and *James A. Furber,* for respondents.

ARMSTRONG, C. J.—This is an appeal by defendant insurance company from a judgment for plaintiffs who were insured by defendant under a comprehensive general liability policy. Plaintiffs had become obligated to pay a third party $1,100 as a result of damage to property of the third party caused by the negligence of an employee of plaintiffs' business. Defendant had denied coverage under the terms of the contract and refused to defend the lawsuit brought against plaintiff by the third party.

Plaintiffs owned and operated a merchant patrol service. They entered into a contract with Redondo Marina to secure the premises as to fire, theft and vandalism. They were also to ensure that the marina's building was kept locked.

On November 29, 1964, plaintiffs' employee went to the marina in response to a telephone call from the King County Sheriff's office. Plaintiffs' employee assisted a patron who was attempting to get his boat out of the water and in doing

so the employee operated the boat elevator. During the operation of the elevator it fell from its track into the water.

The Redondo Marina sued plaintiffs for damages to the elevator. Plaintiffs made an out-of-court settlement with the marina in the sum of $1,100.

Plaintiffs then sued defendant insurance company for the settlement amount plus the attorney's fees incurred in the defense and settlement of the marina's claim. The trial court found for the plaintiffs and against defendant in the sum of $1,100 and awarded $700 to plaintiffs for reasonable attorney's fees and costs. Defendant now appeals from the entire judgment. The reasonableness of the attorney's fees is not here in question.

The dispute involves the applicability of an exclusionary clause relating to damage to property in the care, custody or control of the insured. The insuring agreement of the comprehensive liability policy issued by defendant to plaintiffs reads as follows:

Coverage D—Property Damage Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

The policy definition of "insured" reads:

*The unqualified word "insured" includes the named insured and also includes (1) under coverages B and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such,* and any organization or proprietor with respect to real estate management for the named insured, and if the named insured is a partnership, the unqualified word "insured" also includes any partner therein *but only with respect to his liability as such* . . .
(Italics ours.)

The policy exclusion, which is in dispute here, is as follows:

THIS POLICY DOES NOT APPLY:
. . .

(j) under coverage D, to injury to or destruction of . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control.

The trial court found that the operation of the elevator by plaintiffs' employee did not render the insurance contract inoperable by reason of the care, custody and control exclusion. The court concluded that the exclusionary clause was not applicable and the defendant was obligated to pay the settlement amount and attorney's fees on behalf of the plaintiff. Judgment was entered accordingly.

Defendant's eight assignments of error raise the single question of whether or not the loss was excluded from coverage under the care, custody or control exclusion.

Defendant's main contention is that plaintiffs' employee was operating and controlling the elevator. Defendant argues that although the insurance policy fails to specifically include employees within its definition of "insured", under the doctrine of respondeat superior the acts of the employee are deemed to be the acts of the master, so that the exclusionary provision would be operative.

■ We reject that argument. The rule that a master must respond in damages for injuries inflicted by his servant in the course of employment does not dispose of the issue facing us in this appeal. It establishes the liability of defendant "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property" as agreed in the general insuring agreement. It does not broaden the scope of the word "insured" in the care, custody and control exclusion. This result could very easily be accomplished by stating "this policy does not apply . . . to injury or destruction of property in the care, custody or control of the insured *or any of his employees,* or property as to which the insured *or any of his employees* for any purpose is exercising physical control." That such an inclusion of employees in the "care, custody and control" exclusion has been utilized is demonstrated by the insurance policy

referred to in *A. T. Morris & Co. v. Lumber Mut. Cas. Ins. Co.*, 163 Misc. 715, 298 N.Y.S. 227 (Mun. Ct. 1937).

█ An insurance policy should be interpreted in accordance with the way it would be understood by the average man purchasing insurance. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940). Can we say that the average man would consider the word "insured" to mean the named insured, executive officer or stockholder in one part of the policy and to mean an employee of the insured in another part of the policy? We think not.

In the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same sense throughout the contract. Where its meaning in one instance is clear, that meaning will be attached to it in other parts of the contract. This rule of contract law has been applied to insurance policies. *Schweigert v. Beneficial Standard Life Ins. Co.*, 204 Ore. 294, 282 P.2d 621 (1955); 1 R. Anderson, Couch on Insurance 2d § 15:19 (1959).

Another method of ascertaining the expressed intent of the parties is to examine the contract as a whole. In this approach each clause of the contract helps to interpret the other. All of the words, parts and provisions are to be construed together as one entire contract. *Johnston v. Maryland Cas. Co.*, 22 Wn.2d 305, 155 P.2d 806 (1945); *Jurd v. Pacific Indem. Co.*, 57 Cal. 2d 699, 371 P.2d 569, 21 Cal. Rptr. 793 (1962); 1 R. Anderson, Couch on Insurance 2d § 15:29 (1959).

With the foregoing considerations in mind we will consider the policy in question. The term "insured" was defined with particularity in the insuring contract. The plaintiffs' employee was not included in that description. Since all parts of the policy must be read and construed together we must conclude that plaintiffs' employee was not included in the "care, custody and control" exclusionary clause.

█ We have a further compelling reason for reaching

this result in the well-recognized rule that exclusionary clauses in insurance policies are construed most strongly against the insurer. If there is room for two constructions— one favorable to the insured and the other in favor of the insurer, we must adopt the construction favorable to the insured. *Brown v. Underwriters at Lloyd's,* 53 Wn.2d 142, 332 P.2d 228 (1958).

The judgment will be affirmed.

PEARSON and PETRIE, JJ., concur.