HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff-Appellee, *v.* CASE FOUNDATION COMPANY *et al.*, Defendants-Appellants.

(No. 56094;

First District (2nd Division)—February 6, 1973.

Herrick, McNeill, McElroy & Peregrine, of Chicago, (William T. McNeill, Ray W. Fick, Jr., and Michael J. Hamblet, of counsel,) for appellant Case Foundation Co.

Michael I. Miller, Paul T. Ruxin, and Michael A. Pope, all of Chicago, (Isham, Lincoln & Beale, of counsel,) for appellant Skidmore, Owings & Merrill.

Leibman, Williams, Bennett, Baird & Minow, of Chicago, (David P. List, Thomas H. Morsch, and Henry L. Mason, of counsel,) for appellant Tishman Construction Co.

John G. Poust, Jerome N. Groark, and Dwight C. Adams, all of Chicago, (Hackbert, Rooks, Pitts, Fullagar and Poust, of counsel,) for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from a declaratory judgment entered in a suit by Hartford Accident & Indemnity Company, an insurer, against its insureds Case Foundation Company; Skidmore, Owings & Merrill; Tishman Construction Corporation of Delaware; Jerry Wolman, Anne Wolman, Earl M. Foreman, Phyllis R. Foreman, J. Theodore Dailey, Maureen M. Dailey

and American National Bank and Trust Company of Chicago, Trustee under its Trust No. 21631.[1] In its complaint, Hartford alleged that it issued a policy to the insureds; that Case, Skidmore and Tishman, claiming coverage under the policy, tendered to it the defense of a Federal suit that Jerry Wolman filed against them. Hartford prayed for a determination of the rights and obligations of the parties under the policy. The trial court ruled that Hartford did not have to defend the suit. The issue is whether this ruling was correct.

## I.

On February 12, 1965, Jerry Wolman and his wife owned 85% of the land bound on the west, north and south by North Michigan Avenue, East Delaware and East Chestnut Streets in Chicago.[2] Desiring to develop what is now the John Hancock Center, they entered into an agreement with Skidmore, Owings & Merrill for architectural and engineering services. Wolman was an entrepreneur, a land developer who had a number of business ventures. For example, either alone or with others, he owned the Georgian Towers in Maryland, the Prudential Building and other properties in the District of Columbia, the Philadelphia Eagles and an indoor sports center in Philadelphia and taxicab companies in two major cities. Wolman's investment in the John Hancock project exceeded $5,000,000. The profits he anticipated from the venture were in excess of $20,000,000.

April 20, 1965, Wolman contracted with Tishman Construction Corporation of Delaware to build the 100-story combination office and residential John Hancock Center. The cost was not to exceed $63,000,000. John Hancock Mutual Life Insurance Company agreed to provide the financing because the building would add to its prestige and financing it was consistent with sound economic considerations. On May 3, 1965, at Wolman's expense, Hartford issued its liability policy No. 83 CA 50100 which insured, among others, Wolman, Skidmore, Tishman and all contractors and subcontractors who were to work on the building. Then on July 22, 1965, Tishman entered into a subcontract with Case Foundation

---

[1] For literary convenience, Hartford Accident & Indemnity Company, the plaintiff below and appellee in this court, will be referred to in this opinion as Hartford. Case Foundation Company; Skidmore, Owings & Merrill; Tishman Construction Corporation of Delaware, defendants below and appellants in this court, will be referred to as Case, Skidmore and Tishman, respectively.

[2] The other 15% was owned by Earl M. Foreman and his wife Phyllis. On or about June 15, 1965, the Wolmans sold 10% of their interest in the land to J. Theodore Dailey and his wife Maureen. Title to the entire tract was held by the American National Bank as Trustee.

Company, a California corporation by which Case agreed to construct 57 concrete caissons for part of the foundation of the 100-story building. Case was to provide labor, equipment and the necessary supervision for this and related work.

On February 11, 1970, Wolman filed a complaint in the United States District Court in Chicago in which he alleged that Case, Skidmore and Tishman breached their contracts and were negligent in connection with construction of the John Hancock Center. Case, Skidmore and Tishman tendered defense of the suit to Hartford. Hartford refused the tender but reserved its rights and filed the declaratory judgment suit in this case to which were attached as exhibits a copy of Hartford's policy and Wolman's complaint against Case, Skidmore and Tishman. Hartford prayed for a declaration that the damages alleged by Wolman were not within its policy No. 83 CA 50100 and that it was not obliged to appear, defend, indemnify or provide any monies, costs or expenses to Case, Skidmore or Tishman with respect to the Wolman suit. Answers were filed to Hartford's complaint. Thereafter, it made a motion for judgment on the pleadings. A short time later, Skidmore made a similar motion for partial judgment, one declaring that Hartford was bound to defend the Wolman suit "* * * unless it becomes clear, from further proceedings * * *, that the occurrences therein alleged are not potentially within the coverage of Hartford's policy No. 83 CA 50100."

Briefs were filed. After hearing the parties, the trial court denied Skidmore's motion, granted Hartford's and filed a Memorandum of Decision in which it found that the pleadings presented two issues. (1) Whether the Wolman complaint alleged property damage within Coverage D of Hartford's policy. (2) Whether the occurrences alleged in Wolman's complaint were subject to the provisions of Exclusion (j). The court analyzed Wolman's complaint and concluded that it did not allege damage to property, as that term was used in the coverage provisions of the policy. Wolman's complaint, the court held, alleged negligence and breaches by Case, Skidmore and Tishman which he claimed caused him to lose his investment in and the anticipated profits from the John Hancock Center together with investments in his other ventures. Even if Wolman had alleged damage to property, the court held, Exclusion (j), paragraphs iv(a) and (c) of Hartford's policy would have applied to all of the three defendants in Wolman's suit. Accordingly, the trial court entered a judgment declaring that Hartford's policy did not provide coverage for the damages claimed by Wolman and that Hartford was not obliged to appear, defend, provide costs or fees, indemnify or pay any judgment with respect to Wolman's suit.

## II.

Case, Skidmore and Tishman, in separate briefs, make broad attacks on the trial court's declaratory judgment.[3] They contend that the trial court misconstrued the coverage of Hartford's policy. They insist that by the terms of its policy, Hartford was obligated to assume defense of the Wolman suit until it became clear that his complaint was definitely beyond the policy's coverage. They argue that the trial misconceived the function of a Federal court complaint. And as to Exclusion (j) of the policy, they say that its provisions did not apply to them because the exclusions were not applicable to all of the property they allegedly injured or damaged. Finally, Case, Skidmore and Tishman insist that it was error for the trial court to sustain Hartford's motion for judgment on the pleadings and rule as a matter of law that coverage was not provided them by Hartford's policy.

Hartford, on the other hand, contends that Coverage D of its policy provided insurance protection against property damage liability; that is, damages because of injury to or destruction of property, including loss of its use. Hartford makes the point that Wolman's complaint did not allege injury to or destruction of property; and that even if it did, that is, damage to the caissons which Case constructed, the provisions of Exclusion (j) of its policy would have precluded coverage. Hartford insists that Case, Skidmore and Tishman confuse liability with damages. Its policy, Hartford argues, did not cover every conceivable type of damage for which its insureds might become liable. And as to the construction of the policy, Hartford maintains that the pleadings did not present any question of fact. Therefore, Hartford concludes, the trial court ruled correctly when it sustained the motion for judgment on the pleadings and entered the declaratory judgment.

## III.

■■■ A motion for judgment on the pleadings tests the sufficiency of the pleadings: whether the plaintiff is entitled to the relief sought by his complaint or, alternatively, whether defendant, by his answer, has set up a defense which would entitle him to a hearing on the merits. (*Carebuilt Corp. v. Horsting*, 40 Ill.App.2d 280, 189 N.E.2d 364; *Proesel*

---

[3] Jerry Wolman and his wife Anne filed a notice of appeal but did not file a brief in this court. The Foremans and the Daileys filed notices of appeal and filed briefs in this court. As to them, we have entered an order granting them the relief they sought in the trial court. See Supreme Court Rule 366(a)(5), Ill. Rev. Stat. 1971, ch. 110A, par. 366(a)(5). The American National Bank and Trust Company of Chicago, Trustee under its Trust No. 21631 entered into a stipulation to be dismissed from the suit but be bound by any judgment entered in the cause. Therefore, the only parties affected by this opinion are Hartford, Case, Skidmore and Tishman.

*v. Myers Publishing Co.*, 48 Ill.App.2d 402, 199 N.E.2d 73.) When considering a motion for judgment on the pleadings, the trial court must ascertain whether there is an issue of fact. If there is not, then the only question is which party is entitled to judgment. *Baillon v. S. S. Kresge Co.*, 4 Ill.App.3d 82, 277 N.E.2d 719.

■■ In this case, the record containing motions for judgment on the pleadings, and rulings on them, requires examination of the declaratory judgment complaint, Hartford's policy, the Wolman complaint and the answers. This examination reveals pleadings that presented no questions of fact. The questions raised concerned construction of Hartford's liability insurance policy No. 83 CA 50100. Construction of an insurance policy presents only a question of law. (*Coons v. Home Life Insurance Co.*, 368 Ill. 231, 13 N.E.2d 482; *Cohen v. Northwestern National Life Insurance Co.*, 124 Ill.App.2d 15, 259 N.E.2d 865.) Therefore, we conclude that the trial court properly proceeded to construe Hartford's policy and determined which party was entitled to judgment: in favor of Case, Skidmore and Tishman because they were covered by Hartford's policy; or in favor of Hartford because its policy did not provide coverage and it was under no duty to defend the Wolman suit.

■■■ Insurance policies are contracts. In order to give effect to the intent of the parties, policies should be construed as other contracts are construed. (*Morton v. Travelers Indemnity Co.* (1960), 171 Neb. 433, 106 N.W.2d 710.) Insurance policies should be construed as a whole, giving effect to every part, as far as it is possible. (*Konrad v. Hartford Accident and Indemnity Co.*, 11 Ill.App.2d 503, 526, 137 N.E.2d 855; 22 I.L.P. Insurance § 145.) Where the language in a policy is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. *Banner Insurance Co. v. Avella*, 128 Ill.App.2d 471, 262 N.E.2d 791.

■■ These principles lead us to observe that Hartford's policy is a complex 39-page document that was intended to apply only to claims resulting from construction of the multi-million-dollar John Hancock Center and the existence of the property described in the declarations, including buildings and structures in that location. The policy is a liabilty policy, not one insuring the property or work of the insureds. (*McGann v. Hobbs Lumber Co.* (1965), 150 W.Va. 364, 145 S.E.2d 476.) Under one of its insuring agreements, with respect to the insurance afforded, Hartford undertook to defend any suit against its insureds that alleged injury to or destruction of property, "* * * even if such suit is groundless, false or fraudulent * * *." Under this agreement, Hartford assumed the duty to defend any of its insureds whenever a complaint was filed which alleged facts that brought the case within or potentially within the coverage of its insurance contract. (*Fragman Construction Co. v. Preston Construc-*

*tion Co.,* 1 Ill.App.3d 1002, 274 N.E.2d 614.) Whether, in the suit filed by Wolman, Hartford had the duty to defend Case, Skidmore and Tishman, depended on the allegations of the complaint and the provisions of its policy. (*Maretti v. Midland National Insurance Co.,* 42 Ill.App.2d 17, 190 N.E.2d 597; *Thompson v. Glover,* 115 Ill.App.2d 253, 253 N.E.2d 132.) We have looked at Wolman's complaint. Contrary to the contentions and arguments of Case, Skidmore and Tishman, we find its allegations clear and unambiguous.

It was a five-count complaint. Counts I to III stated Wolman's cause of action against Skidmore. These counts alleged that Skidmore breached the contract under which it undertook to supervise construction of the John Hancock Center by failing to provide accurate cost estimates, proper design documents, proper construction documents for the caissons and proper inspection; that it breached the warranties it made with regard to design, construction and discovery of defects and deficiencies in work and materials and that Skidmore was negligent in the performance of its agreement. Wolman alleged that as a direct and natural consequence of Skidmore's breaches and negligence, there were delays that caused loss of financing necessary to complete the John Hancock Center; that on December 21, 1966, in order to mitigate his damages, he sold his interest in the project to the John Hancock Mutual Life Insurance Company and thereby lost his investment in excess of $5,000,000, lost the $20,000,000 anticipated profits and was compelled to liquidate his other ventures, causing him to lose more than $50,000,000. He prayed judgment against Skidmore in the sum of $75,000,000.

Count IV stated Wolman's cause of action against Tishman. This count alleged that Tishman was negligent in the performance of its construction contract by failing to provide timely and accurate estimates of costs, failing to properly supervise construction, failing to properly supervise construction of the foundation and the pouring of the concrete caissons. Wolman alleged that as a direct result of Tishman's negligence, there was delay in building the John Hancock Center with the result that necessary financing was lost and he was compelled to sell his interest to the John Hancock Mutual Insurance Company with a loss of his investment in excess of $5,000,000, anticipated profits in excess of $20,000,000 and liquidation of his holdings in other enterprises at a loss in excess of $50,000,000. Wolman prayed for damages against Tishman in the amount of $75,000,000.

Count V stated Wolman's cause of action against Case Foundation Company. This count alleged that Case was negligent in the performance of its subcontract to build the caissons: it selected inferior, unsuitable and defective materials; it failed to use proper construction procedures,

causing the caissons to contain great voids, holes, openings and making it necessary to remove or repair a number of them. As a direct result of Case's negligence, Wolman alleged, there was the delay that caused him to incur great and unanticipated expenses, loss of his investment in the John Hancock Center, including loss of profits. He prayed judgment against Case in the sum of $25,000,000.

The pertinent provisions of Hartford's policy provided coverage for "* * * damages because of injury to or destruction of property, including the loss of use thereof * * *." But, even a cursory reading of Wolman's complaint reveals that he did not allege injury to or destruction of property by Case, Skidmore and Tishman within the meaning of the policy. Nor did he allege that as a result of what Case, Skidmore and Tishman did or did not do, he suffered damages which were the consequences of injury to or destruction of other property he owned. What Wolman alleged were breaches of contracts and negligence by Case, Skidmore and Tishman which he claimed caused him to lose his investment in and anticipated profits from the John Hancock Center project and his financial interests in other business ventures. This being so, we must decide whether investments, anticipated profits and financial interests are property as that word is used in the coverage provisions of Hartford's policy.

■■■ In the construction of insurance policies, it is a general rule that absent language to the contrary, a word or phrase in one part is presumed to have the same meaning when it is used in another part of a policy. (*Schweigert v. Beneficial Standard Life Insurance Co.* (1955), 204 Or. 294, 303, 282 P.2d 621; *Holter v. National Union Fire Insurance Co.* (1969), 1 Wash.App. 46, 459 P.2d 61; Couch on Insurance § 15:19.) Reasoning from this principle, we held in *Banner Insurance Co. v. Avella,* 128 Ill.App.2d 471, 262 N.E.2d 791 that one who accepts the meaning of a term in the coverage clause of a policy must give that term the same meaning when it appears in the exclusionary clause. Applying these rules to this case, we find that after its undefined use in Coverage D, the word property is used in the policy declarations as the "property bounded by Michigan Ave., Delaware, Chestnut, and Seneca Streets, and the lot line of the Casino Club." Then, the word appears several times in Exclusion (j) as "property owned or occupied by or rented to the insured," "property held by the insured for sale," "property entrusted to the insured for storage or safekeeping," "property in the custody of the insured" and "property which is being transported by the insured by motor vehicle." In our judgment, when Coverage D of Hartford's policy is read in the light of its applicable exclusions, it becomes clear that the word property as used in that provision means physical or tangible property (*Geddes*

& Smith, Inc. v. St. Paul Mercury Indemnity Co. (1959), 51 Cal.2d 558, 334 P.2d 881; Hogan v. Midland National Insurance Co. (1970), 3 Cal.3d 553, 476 P.2d 825.) Investments, anticipated profits and financial interests in business ventures are intangibles; they are not property as that word is used in Coverage D of Hartford's liability policy. Wolman's complaint that alleged injury to his investments and anticipated profits did not allege facts that stated a case within or potentially within the coverage of the policy. Therefore, the trial court ruled correctly when, after sustaining Hartford's motion for judgment on the pleadings, it held that policy No. 83 CA 50100 did not provide Case, Skidmore and Tishman with coverage and that Hartford was not obliged to defend the Wolman suit.

## IV.

■■■■ Case, Skidmore and Tishman contend, however, that Wolman did not sue for injury to or destruction of his investments and anticipated profits. They argue that he brought suit for consequential damages, damages that were the consequences of injury to or destruction of some part or portion of the John Hancock Center. Alerted by the insistence of this argument, we have carefully read Wolman's complaint. It did not allege consequential damages; that is, damages which were the consequences of injury to or destruction of property. Consequential damages mean loss or injury that does not flow directly and immediately from the wrongful act of a party but are the consequences or results of such an act. (See Carva Food Corp. v. Dawley (1961), 202 Va. 543, 546, 118 S.E.2d 664.) Wolman's complaint alleged that because of breaches of contract and negligence by Case, Skidmore and Tishman, there were delays in the construction of the 100-story John Hancock Center causing him to lose financing commitments and compelling him to sell his interest in the project to the loss of investments and anticipated profits. A different case would have been stated had Wolman alleged injury to or destruction of property by Case, Skidmore and Tishman which produced the claimed damages. Whether, had such allegations been made, consequential damages would have been covered by Hartford's policy is a question we need not decide because Wolman's complaint did not allege the essential facts.

■■ Ordinarily, what we have said would dispose of this appeal without any discussion of an exclusionary clause. Exclusions in an insurance policy have relevance only when there is coverage. An exclusion, in insurance parlance, serves the purpose of taking out persons or events otherwise included within the defined scope of coverage. (Mobile Oil Corp. v. Reliance Insurance Co. (1971), 69 Misc.2d 876, 332 N.Y.S.2d 532.)

Therefore, having held that the policy in question did not include Case, Skidmore and Tishman within its coverage, our task with this case should end. It does not because the parties, assuming an alternative possibility, have argued the applicability of Exclusion (j) of Hartford's policy. Hartford contends that even if Wolman had alleged injury to or destruction of any part of the John Hancock Center, particularly construction of the caissons, Exclusion(j) would have precluded coverage to Case, Skidmore or Tishman.

This exclusion, in the parts pertinent to the controversy before us, declared that the policy did not apply "(2) * * * to injury to or destruction of * * * (iv) that particular part of any property, * * * (a) upon which operations are being performed by or on behalf of the insured at the time of the injury thereto or destruction thereof, arising out of such operations, or * * * (c) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured * * * [and] (3) to injury or destruction of any goods, * * * or work completed by or for the named insured, out of which the accident arises." Case, Skidmore and Tishman argue that, as to each of them, because Skidmore was the architect, Tishman the general contractor and Case the caisson subcontractor, the exclusionary provisions have different consequences. They insist that Hartford mistakenly applies the exclusion clause without regard to the different functions each of them performed in building the John Hancock Center.

We do not agree. Exclusion (j) applies "to injury to or destruction of * * * that particular part of any property * * * upon which operations are being performed by or on behalf of the insured at the time of the injury to or destruction thereof, arising out of such operations * * *." This exclusion does not distinguish between functions. It applies whether the injury or destruction results from operations by or on behalf of an architect, a general contractor or a subcontractor engaged in the construction of caissons. The last paragraph of this exclusionary clause excepts coverage for any "injury to or destruction of any goods * * * or work completed by or for the named insured out of which the accident arises." To understand these exclusionary provisions, it is important to observe that Hartford's policy insured the John Hancock Center, its owners, financiers, prospective managers, architects, general contractor "* * * and all contractors and subcontractors engaged for work on this project." Under this policy, the insureds were on equal footing. Plainly, the insured owners could never become legally liable to pay damages for injury to or destruction of any part of the John Hancock Center. And as to the other insureds, including Case, Skidmore and Tishman, Exclusion

(j) when read with the insuring agreements, conditions and declarations, precluded coverage for any injury to or destruction of any part of the John Hancock Center. Hartford's policy provided coverage only for injury to or destruction of some other property.

■■ For example, if in the construction of the building, while installing caissons, a valuable Gauguin or a bronze by Ipousteguy owned by Wolman and intended for display in the completed project, were injured or destroyed, Hartford's policy would have provided coverage. If because of a faulty caisson a crane collapsed and part of it fell on Wolman's automobile traveling north on Michigan Avenue, Hartford's policy would have provided coverage. It is possible to imagine other examples. Therefore, it is our opinion that even if Wolman had alleged injury to or destruction of any part of the John Hancock Center, say in construction of the caissons, Exclusion (j) would have applied to preclude Case, Skidmore and Tishman coverage under Hartford's policy. (*Consumers Construction Co. v. American Motorists Insurance Co.*, 118 Ill.App.2d 441, 254 N.E.2d 265.) With allowance for the factual differences in each case, this opinion finds support in well reasoned decisions of other reviewing courts. (See *Hartford Accident and Indemnity Co. v. Olson Bros., Inc.* (1971), 187 Neb. 179, 188 N.W.2d 699; *Haugan v. Home Indemnity Co.* (1972), (S.D.), 197 N.W.2d 18; *Engine Service, Inc. v. Reliance Insurance Co.* (Wyo. 1971), 487 P.2d 474; *Vobill Homes, Inc. v. Hartford Accident & Indemnity Co.* (La.App. 1965), 179 So.2d 496; *McGann v. Hobbs Lumber Co.* (1965), 150 W.Va. 364, 145 S.E.2d 476; *Volf v. Ocean Accident and Guarantee Corp.* (1958), 50 Cal.2d 373, 325 P.2d 987.) We conclude, therefore, that the trial court did not err when it ruled that even had Wolman alleged injury to or destruction of property, Exclusion (j) in Hartford's policy would have precluded coverage to Case, Skidmore and Tishman.

## V.

In separate briefs that reflect the work of capable and conscientious counsel, Case, Skidmore and Tishman agree on the issue presented. They have, however, proliferated their contentions, arguments, points and authorities. Although these have been helpful to the court, it would overly extend this opinion were we to subject them to detailed discussion. It is enough for us to say that all have been considered in determining the proper disposition of this appeal. Having done so, we affirm the judgment of the trial court.

Affirmed.

STAMOS, P. J., and SCHWARTZ, J., concur.