548 F.2d 681
 DREIS & KRUMP MANUFACTURING COMPANY, Plaintiff-Appellee,
v.
The PHOENIX INSURANCE COMPANY and Travelers Insurance
Company, Successor by Merger to the Phoenix
Insurance Company, Defendants-Appellants.
 No. 76-1355.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 29, 1976.
Decided Jan. 14, 1977.
Rehearing Denied Feb. 25, 1977.
 
 Francis B. Libbe, Gary M. Elden, Samuel Fifer (argued), Chicago, Ill., for defendants-appellants.
 Ronald Wilder, Chicago, Ill., for plaintiff-appellee.
 Before CASTLE, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 This appeal involves the necessity of construing several provisions and definitions in an insurance policy.
 
 
 2
 Jurisdiction is based upon diversity of citizenship and inasmuch as the insurance policy was apparently executed in Illinois, Illinois law governs and apparently was applied by the district court, but we reconfirm Judge Cummings' request in Carboline Company v. Home Indemnity Company, 522 F.2d 363, 368 (7th Cir. 1975) that "(i)t would be helpful to this Court in the future if the district courts in diversity cases would include a determination of the applicable law in any appealable order or decision."
 
 
 3
 * Dreis & Krump Manufacturing Company, the plaintiff-insured, sold a press brake to Joseph T. Ryerson & Son, Inc. Ryerson sold the brake to Bustin Steel Products, Inc. Bustin brought suit against Dreis & Krump and Ryerson, claiming the brake was defective. Dreis & Krump tendered the defense of the Bustin suit to the defendant-insurer, the Phoenix Insurance Company, which refused to defend on the ground that the allegations in the complaint filed by Bustin indicated there was no coverage. Ryerson filed a cross-claim against Dreis & Krump in the Bustin action. Dreis & Krump and Ryerson were held jointly liable in the Bustin suit.
 
 
 4
 Dreis & Krump instituted the present action against Phoenix to establish that Phoenix breached its duty to defend Dreis & Krump in the Bustin suit, and therefore is liable for the judgment and costs of defense in that action. The district court entered summary judgment against Phoenix and in favor of Dreis & Krump for $49,601.95, representing one-half of the judgment entered jointly against Dreis & Krump and Ryerson in the Bustin litigation, in the amount of $14,533.70 plus costs, expenses and fees in connection therewith of $35,068.25. Phoenix has appealed, raising three issues:
 
 
 5
 (1) Whether Phoenix breached its duty to defend under the Contractual Liability insurance endorsement (hereinafter referred to as the Endorsement or as the Contractual Endorsement);
 
 
 6
 (2) Whether Phoenix breached its duty to defend under its Comprehensive General Liability insurance policy (hereinafter referred to as the CGL); and
 
 
 7
 (3) Whether there is some other basis for finding that Phoenix had a duty to defend.
 
 II
 
 8
 As the Illinois court in Sherman v. Home Insurance Co., 25 Ill.App.3d 519, 323 N.E.2d 550, 552 (1st Dist. 1975), noted:
 
 
 9
 An insurer must defend a suit brought against its insured when the complaint states facts which fall within the potential coverage of the policy. If the complaint does not state facts bringing it within the policy, the insurance company may decline to defend the suit. . . . An unjustified refusal to defend makes the company liable for the amount recovered from (the) insured . . . by way of judgment . . ., for his costs in defending the suit and for any additional damages caused by its refusal to defend. (Citations omitted, emphasis added.)
 
 
 10
 Accordingly, Phoenix's duty to defend is determined by examining the " 'four corners' of the (pertinent) complaint and the policy to determine if the contents of the complaint, when taken at face value, alleged a cause of action which is potentially covered by the policy." Fragman Construction Co. v. Preston Construction Co., 1 Ill.App.3d 1002, 274 N.E.2d 614, 616 (2d Dist. 1971).[1]
 
 
 11
 The Contractual Endorsement provides that Phoenix will "pay on behalf of the Insured all sums which the Insured by reason of the liability assumed by him under any written contract shall become legally obligated to pay as damages because of . . . injury to or destruction of property including the loss of use thereof, caused by accident. . . . (Supp.App. at 28; emphasis added.)
 
 
 12
 The Endorsement designates "Purchase Order Agreements" as the contracts covered by the Endorsement. Ryerson purchased the press brake which it sold to Bustin through the medium of a Ryerson Purchase Order.
 
 
 13
 * An important preliminary issue is which pleading in the Bustin suit must be examined to determine whether Phoenix had a duty to defend under the Contractual Endorsement the complaint by Bustin or the cross-claim by Ryerson. The coverage provision of the Endorsement requires that before there can be coverage the party seeking to recover against the insured must be in a contractual relationship with Dreis & Krump. The complaint filed by Bustin against Dreis & Krump does not claim that it has any right against Dreis & Krump based on a contract.[2] Therefore, the pertinent pleading for purposes of coverage under the Endorsement must be the Ryerson cross-claim, since Ryerson was the only party with whom Dreis & Krump had entered into a contract. However, the letters from Dreis & Krump to Phoenix indicate that Dreis & Krump tendered the defense solely on the basis of the allegations in the Bustin complaint, and there is no indication in the record that Dreis & Krump, when it tendered the defense to Phoenix, apprised Phoenix of either the existence of the Ryerson cross-claim or of the allegations contained therein. This fact in itself poses a serious obstacle to finding that Phoenix breached its duty to defend under the Endorsement.[3]
 
 
 14
 Basically, Dreis & Krump makes two arguments to support its contention that Phoenix had a duty to defend it under the Contractual Endorsement. First, the Ryerson purchase order contains express warranties and the Ryerson cross-claim (Count I) sought recovery against Dreis & Krump for breach of these warranties. In the second place, the Ryerson purchase order contains an indemnification clause (Paragraph 3) which Dreis & Krump contends required it to indemnify Ryerson under the facts of this case.
 
 B
 
 15
 Dreis & Krump's argument is basically that since "Purchase Order Agreements" are designated as covered contracts under the Endorsement and since the Ryerson purchase order contained express warranties and since Ryerson's cross-claim alleged breach of these warranties, there was a duty to defend under the Endorsement.
 
 
 16
 There are two problems with this argument, in addition to the earlier problem dealing with proper notice to the insurer. First, Exclusion 1(a) of the Contractual Liability Endorsement expressly states that "(t)his endorsement does not apply . . . to liability for any warranty of goods or products." Although there appears to have been some suggestion by the district court and Dreis & Krump that the coexistence of this exclusion and exclusion (a) of the CGL creates an ambiguity which must be construed against the insurer, it is difficult to support this conclusion.
 
 
 17
 Exclusion (a) in the CGL provides that "this insurance (CGL) does not apply . . . to liability assumed by the insured under any contract or agreement . . .; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."
 
 
 18
 When read together, the two exclusions do not appear inconsistent. Under the CGL, "tangible property" damage resulting from the insured's breach of warranties is covered, but contracts of indemnification are not. Thus, if the insured desires coverage for liability resulting from such indemnification agreements, he must purchase the contractual endorsement at an additional premium. But the contractual endorsement, if purchased, only covers liability resulting from written indemnification agreements and not warranty liability, which is covered, if at all, by the CGL policy. This court in Carboline Company v. Home Indemnity Co., 522 F.2d 363, 365-66 (7th Cir. 1975), had little difficulty in giving effect to an exclusion of warranties from coverage under a Contractual Endorsement similar to the one involved in this case.
 
 
 19
 The second problem with Dreis & Krump's express warranty argument is that this circuit has construed the coverage language in the endorsement "liability assumed by him under any written contract" to mean a specific written agreement between the insured and some third party whereby the insured agrees to "indemnify" the third party. J. L. Simmons Co. v. Fidelity & Casualty Co., 511 F.2d 87, 96 (7th Cir. 1975).[4] See also Haugan v. Home Indemnity Co., 86 S.D. 406, 197 N.W.2d 18 (1972). Under this interpretation of the endorsement's coverage, an express warranty would not constitute a written "indemnification" agreement.
 
 C
 
 20
 Paragraph three of the Ryerson purchase order provides:You (Dreis & Krump) agree to indemnify us (Ryerson) and our successors and assigns, against all liabilities and expenses, resulting from any claim or infringement of any patent in connection with the production of goods or the performance of services hereby or the use or sale of such goods (Supp.App. at 46).
 
 
 21
 Dreis & Krump contends that Phoenix had a duty to defend under the contractual endorsement because of this "indemnification" clause.
 
 
 22
 Unlike the express warranties, this clause clearly satisfies the Simmons requirement that there be a specific written agreement to indemnify, when the policy requires "liability assumed by . . . the insured under any written contract." However, for several reasons, it is questionable that paragraph three of the Ryerson Purchase Order can properly serve as a basis for finding that Phoenix had a duty to defend the Bustin action.
 
 
 23
 Again, as noted at the outset, there is no indication that Dreis & Krump ever notified Phoenix of the Ryerson cross-claim. Moreover, even if it is assumed that Phoenix had notice of the Ryerson cross-claim when it refused Dreis & Krump's tender of defense, there is no allegation in the cross-claim that Ryerson had a right to be "indemnified" by Dreis & Krump pursuant to a written indemnification agreement. As noted earlier, an insurer's duty to defend depends on the allegations in the pertinent pleadings.
 
 
 24
 In addition, there are several facts in this case which suggest that the indemnification language in paragraph three was never intended to cover claims involving defective products, manufactured by Dreis & Krump and distributed by Ryerson.[5]
 
 
 25
 First, the original complaint filed by Dreis & Krump in this action did not allege that Phoenix breached a duty to defend under the Endorsement, whether that duty arose as a result of the indemnification clause or from a breach of warranties in the purchase order. The record indicates that this allegation did not arise until the district court, sua sponte, raised the possibility that Phoenix might have had a duty to defend under the Endorsement and suggested that Dreis & Krump might desire to amend its complaint to allege such a duty. If the indemnification clause was intended to have the broad scope claimed by Dreis & Krump, it is unlikely that Dreis & Krump would have waited for the district court to suggest its relevance before making it a basis for its claim that Phoenix breached its duty to defend.[6]
 
 
 26
 In the second place, if paragraph three was even arguably intended to have the meaning urged by Dreis & Krump, it is unlikely that Ryerson, who is the contractual beneficiary of the indemnification clause in the Ryerson purchase order, would have filed a cross-claim against Dreis & Krump in the Bustin suit and omitted such an obvious ground of recovery. The Ryerson cross-claim makes no mention of any written indemnification agreement: Count I alleges breach of express warranties; Count II alleges breach of implied warranties; and Count III alleges an implied right to indemnification based on the special relationship between the manufacturer and distributor.[7]D
 
 
 27
 There remain two further problems with respect to Phoenix's duty to defend under the Contractual Endorsement.
 
 
 28
 First, it is necessary to determine whether the pleadings in the Bustin suit sufficiently allege "property" damage within the meaning of the coverage provision of the endorsement. Dreis & Krump contends that there is no need to allege "tangible" property damage for there to be coverage under the endorsement. The CGL defines property damage as "tangible" property damage. There is no definition of property in the Endorsement, and the Endorsement indicates generally that the definitional section of the CGL is not applicable to the Endorsement. However, in Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill.App.3d 115, 294 N.E.2d 7, 13 (1st Dist. 1973), the court held that:
 
 
 29
 In the construction of insurance policies, it is a general rule that absent language to the contrary, a word or phrase in one part is presumed to have the same meaning when it is used in another part of a policy. (Schweigert v. Beneficial Standard Life Insurance Co. (1955), 204 Or. 294, 303, 282 P.2d 621; Holter v. National Union Fire Insurance Co. (1969), 1 Wash.App. 46, 459 P.2d 61; Couch on Insurance § 15:19.) Reasoning from this principle, we held in Banner Insurance Co. v. Avella, 128 Ill.App.2d 471, 262 N.E.2d 791 that one who accepts the meaning of a term in the coverage clause of a policy must give that term the same meaning when it appears in the exclusionary clause.
 
 
 30
 Inasmuch as the Endorsement does not define "property" nor expressly exclude the definition of "property" which appears in the CGL, there is at least grave doubt as to whether the Bustin pleadings sufficiently allege "property" damage in not alleging tangible property damage.
 
 
 31
 The final problem is whether the damage alleged in the Bustin suit was caused by "accident." In Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co., 508 F.2d 417, 420 (7th Cir. 1975), this court said:
 
 
 32
 . . . (T)he damages claimed by Midland were not the result of "an occurrence" as required by the terms of the policy. An "occurrence" is defined as "an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Because Midland's complaint controls the question whether defendant must accept the tender of defense, it is of course immaterial that plaintiff's declaratory judgment complaint characterizes Midland's suit as "for property damage arising from an occurrence of alleged negligent manufacture" of aluminum tennis racket frames by plaintiff. If one of the completed rackets had broken during normal use due to the defective frames and a person or an item of property had been harmed, it seems clear that there would have been an "occurrence" and that defendant would have had responsibility for plaintiff's defense. Such a situation would clearly be "an accident." The policy does not, however, cover "an occurrence of alleged negligent manufacture"; it covers negligent manufacture that results in "an occurrence." Plaintiff's strained interpretations aside, the Midland complaint would not support a reasonable belief that Midland's damages were the result of "an occurrence" within the definition of the policy in suit.
 
 
 33
 The Hamilton Die Cast language applies equally here. For all of the reasons stated above the Contractual Endorsement does not provide a basis for finding that Phoenix breached a duty to defend Dreis & Krump in the Bustin suit.
 
 III
 
 34
 The pertinent coverage language of the CGL is:
 
 
 35
 The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because ofCoverage B. property damage
 
 
 36
 to which this insurance applies, caused by an occurrence, and the company shall have . . . the duty to defend any suit against the insured seeking damages on account of . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . . (Supp.App. at 26; emphasis added.)
 
 
 37
 The pertinent definitions include (all emphasis added):
 
 
 38
 1. "property damage" means injury to or destruction of tangible property (Supp.App.at 23);
 
 
 39
 2. "damages" includes . . . damages for loss of use of property resulting from property damage (Supp.App. at 22); and
 
 
 40
 3. "occurrence" means an accident, including injurious exposure to conditions, which results . . . in . . . property damage neither expected nor intended from the standpoint of the insured (Supp.App. at 23).
 
 
 41
 The CGL portion of the policy clearly indicates that there is no coverage if the only damages alleged in the complaint against the insured are consequential damages such as loss of use, lost profits, and so forth. Hence, in order to find that Phoenix had a duty to defend under CGL, the Bustin complaint must have alleged facts which at least potentially claim "tangible" property damage, caused by an "occurrence."
 
 
 42
 * Dreis & Krump first attempts to argue that loss of use of tangible property is sufficient "tangible" property damage to come within the coverage of the CGL. Specifically, Dreis & Krump points to the allegations in the Bustin complaint that Bustin lost the use of the special structure built to house the press brake as a consequence of the defectively manufactured brake, and contends that the reduction in the market value of the structure was an injury to property sufficient to satisfy the property damage requirement in the CGL.
 
 
 43
 Even if it is assumed that the authorities relied on by the plaintiff support his contention, those cases were decided by state courts in states other than Illinois or by circuits other than the Seventh. Both the Illinois courts and this circuit have adopted the view that, at least where property damage is defined as "tangible" property damage,[8] some actual injury to " tangible" property must be alleged before consequential damages such as loss of use may be recovered. See Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill.App.3d 115, 294 N.E.2d 7 (1st Dist. 1973); Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co., 508 F.2d 417 (7th Cir. 1975); Hartford Accident & Indemnity Co. v. Crider, 392 F.Supp 162 (N.D.Ill.1974). In Hamilton Die Cast, we said at 419-20:
 
 
 44
 For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused "property damage" to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its car from the market, there has not been "injury to or destruction of tangible property," which is (as noted) the definition of "property damage" in the policy. We also reject plaintiff's contention that because Midland's complaint implicitly seeks compensation for the loss of use of it machinery for finishing the rackets idled by the alleged lack of quality frames, the suit is one for "property damage." Idled machinery is not injured or destroyed tangible property and, therefore, there is no "property damage" within the coverage of the policy.
 
 
 45
 Dreis & Krump also contends, however, that even under the Hamilton Die Cast holding, the allegations in the Bustin complaint potentially seek recovery for damages to "tangible property." Dreis & Krump places reliance on the following allegations in the Bustin complaint to support this contention:
 
 1. Count I:
 
 46
 a) Par. 3: "Upon delivery of the Brake, defects of its entire electrical system were discovered and gauges essential for its operation were missing. These facts and the additional fact that certain parts of the machine had never been welded into place indicated that the Brake had never been tested before delivery."
 
 
 47
 b) Par. 4: "Despite timely notice of these facts to Ryerson, it took several months to rectify these defects. During this period it was impossible to operate the machine and the plaintiff was forced to expend sums of money in the form of labor and equipment in an attempt to rectify these defects. . . ."
 
 
 48
 c) Par. 5: "It was only after the correction of these defects, at great loss and expense to the plaintiff, that the machine could be operated and tested. Upon operation of the machine, it was discovered that it was inherently defective due to faulty design and construction and incapable of being operated at its stated capacity . . . without danger to life and property."
 
 
 49
 2. Count VII, par. 3: "In fact, however, the said Brake was not fit for the ordinary purposes for which it was sold, in that the Brake had been defectively designed and manufactured with a press bed unable to provide the necessary resistance to the ram when the machine is operated at only a fraction of its rated capacity.
 
 
 50
 Basically, Dreis & Krump argues that these allegations potentially state a claim of tangible property damage (D&K Brief at 25-26):
 
 
 51
 Since a press brake is intended to bend metal piece parts into specific configurations, Bustin could not have known that the press brake operated improperly unless the wrong configurations were formed. The piece parts used in making the wrong configurations were obviously damaged and rendered useless. This is what Bustin was referring to when it alleged that the press brake could not be operated without damage to property. . . .
 
 
 52
 Logic dictates that if a machine is designed to produce metal piece parts but it operates defectively, the property or parts being processed will be damaged. Thus, if the press bed on which the piece parts rest provides improper resistance, the piece parts must be damaged when struck by the ram.
 
 
 53
 . . . Thus, when Bustin alleged it expended sums of money on equipment to rectify the defects, the equipment referred to was damaged piece parts.
 
 
 54
 The district court concluded that there was no allegation of tangible property damage. Under all of the facts of this case, we cannot conclude that this finding was clearly erroneous.
 
 B
 
 55
 The damage which Dreis & Krump claims is potentially alleged in the Bustin complaint is damage to piece parts used in testing the machine and attempting to remedy the defects. The question is, therefore, whether such conduct on the part of Bustin constitutes an "occurrence" within the coverage provision of the CGL.
 
 
 56
 "Occurrence" is defined in the CGL as "an accident, including injurious exposure to conditions, which results . . . in . . . property damage neither expected nor intended from the standpoint of the insured." Phoenix contends the use of materials to test the defective brake was intentional, and therefore non-accidental, and therefore was not an occurrence.
 
 
 57
 In Hamilton Die Cast, this court construed this definition in a case where the insured had defectively manufactured tennis racket frames (exactly as the insured here defectively manufactured the press brake):If one of the completed rackets (i. e., the person who purchased the defective frame had put in the strings and sold the racket) had broken during normal use due to the defective frames and a person or an item of property had been harmed, it seems clear that there would have been an "occurrence". . . . Such a situation would clearly be "an accident." The policy does not, however, cover "an occurrence of alleged negligent manufacture"; it covers negligent manufacture that results in "an occurrence."
 
 
 58
 Hamilton Die Cast, supra, at 420.
 
 
 59
 For these reasons the CGL does not provide a basis for finding that Phoenix breached a duty to defend Dreis & Krump in the Bustin suit.
 
 IV
 
 60
 Parts II and III supra, are premised on the assumption that the relevant inquiry was whether the pertinent pleadings in the Bustin action alleged facts potentially within the respective coverage provisions of the Contractual Endorsement and the CGL. However, it appears that the district court also thought there existed no duty to defend under either the Contractual Endorsement or the CGL. Rather, it seems that, because of perceived ambiguities in the policies and a Dreis & Krump affidavit suggesting that it thought it was covered under the circumstances of the Bustin suit, the court concluded that Dreis & Krump had purchased coverage beyond that specified in the Contractual Endorsement and the CGL. Whatever past ambiguity may have rested in the policy provisions has heretofore been resolved by prior decisions of Illinois courts and of this court.
 
 
 61
 In the argument in the court below, the judge asked counsel for Dreis & Krump whether it was seeking to have the policies reformed to reflect what Dreis & Krump considered to be the parties' intent, and the response was in the negative. Apparently, Dreis & Krump was of the opinion that a duty to defend could be found from an examination of the policies themselves in light of the Bustin pleadings, without resort to extrinsic evidence.
 
 
 62
 Hence, the court's conclusion that there existed a duty to defend, although there was no coverage under the Contractual Endorsement or the CGL, cannot stand.
 
 
 63
 For these reasons, the judgment of the district court is reversed and the cause is remanded for the purpose of entering judgment in favor of Phoenix.
 
 
 64
 REVERSED AND REMANDED.
 
 
 
 [1]
 The court in Sherman, supra, at 553, indicated that in Illinois an insurer is not required to look to facts outside the complaint in determining whether there is potential coverage under its policy
 
 
 [2]
 No claim has been made under any third-party beneficiary theory
 
 
 [3]
 To the extent that the district court based its decision on Phoenix having a duty to defend under the Endorsement, it did not consider this problem
 
 
 [4]
 Also see United States Steel Corp. v. Hartford Accident & Indemnity Co., 511 F.2d 96 (7th Cir. 1975). United States Steel is not as clear on this point, but there was a contract of indemnification and at the time the defense was tendered to the insurer there was a count against the insured which alleged, as a ground for recovery, an express indemnity agreement
 
 
 [5]
 It is interesting to note that Dreis & Krump quotes paragraph three twice in its brief, once stating "claim or infringement" and once stating "claim of infringement." The language of the purchase order as it appears in the record is almost impossible to read, but apparently reads "or." Nevertheless the word "claim" is colored by the subsequent reference to patent infringement
 
 
 [6]
 It is also important to note that there is no mention of the Contractual Endorsement or the Indemnification Clause in the correspondence between Dreis & Krump and Phoenix relating to the tender of defense
 
 
 [7]
 There is no indication in the record that Dreis & Krump ever indemnified Ryerson for the latter's Bustin liability. In fact, inasmuch as the district court, based on a Dreis & Krump affidavit, fixed the Bustin damages at one-half of the joint Dreis & Krump and Ryerson liability, it seems reasonably certain that Dreis & Krump was not held responsible for Ryerson's share of the damages in the Bustin case
 
 
 [8]
 In fact, J. Leighton's opinion in Case Foundation indicates that, even where property damage is not expressly defined as "tangible" property damage, there must be some actual "tangible" property damage in Illinois. Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill.App.3d 115, 294 N.E.2d 7 (1st Dist. 1973)