GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee and Counterdefendant-Appellee, v. ROBERT B. McMANUS, INC., Defendant-Appellant (Art's Transportation, Inc., *et al.*, Intervenors and Counterplaintiffs-Appellants).

First District (1st Division)   Nos. 1—93—3310, 1—93—3386 cons.

Opinion filed May 1, 1995.

Allen H. Meyer and Glenn A. Schwartz, both of Chicago, for appellants Art's Transportation, Inc., Windy City Coaches, and Art's Special Services, Inc.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Anne Scheitlin Johnson, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

This case requires us to determine the event that triggered an errors and omissions insurance policy.

The controversy took root when a broker, Robert B. McManus, Inc. (McManus), obtained liability coverage for Art's Transportation, Inc., Windy City Coaches, and Art's Special Services, Inc. (Art's), with Savoy Reinsurance Company Limited (Savoy). The effective policy period was December 31, 1987, to December 31, 1988. Everyone agrees that Savoy was not licensed to do business in Illinois at the time the policy was obtained.

After the Savoy policy was issued, claims occurred. There were lawsuits. Savoy began defending those lawsuits. In May 1991, after more than two years of defending Art's, Savoy's lawyers withdrew from the claims and lawsuits because the insurance company was not paying legal fees. That required Art's to hire its own lawyer and settle and litigate the pending claims and lawsuits at its own expense.

■ In June 1991 Art's made a claim against McManus under the broker's errors and omissions policy. The claim was based on a provision of the Illinois Insurance Code. That section, now section 121—4 (215 ILCS 5/121—4 (West 1992)), concerns unauthorized insurance companies and provides, in part:

> "If any such unauthorized insurer fails to pay any claim or loss within the provisions of such an insurance contract, any person who assisted or in any manner aided directly or indirectly in the procurement of the insurance contract shall be liable to the insured for the full amount of the claim or loss as provided in the insurance contract."

Clearly, McManus would be liable to Art's for the claims or loss that would have been covered by the Savoy policy. That is not the issue before us. The issue is whether McManus' errors and omissions policy written by General Insurance Company of America (General) covers the claims or loss that would have been covered by the Savoy policy.

General's errors and omissions policy was effective from April 4, 1991, to April 4, 1992. It contained a prior acts exclusion, set forth in an endorsement, which provided:

> "It is hereby understood and agreed that coverage shall not apply to claims or suits arising as a result of acts, errors, or omissions which occurred prior to April 4, 1990."

The question, then, is: When did the "act, error, or omission" by McManus take place for the purpose of coverage?

If it took place just before December 31, 1987, when the Savoy policy went into effect, there would be no claim under the errors and omissions policy.

If it took place in May 1991, when Savoy's lawyer withdrew, leaving Art's high and dry, the June 1991 claim would trigger coverage. (General does not contend there was any defect in the way it was notified about Art's claim against McManus.)

The case is before us on General's action for declaratory judgment. General sued McManus, seeking a declaration that McManus was not covered by the errors and omissions policy. Art's intervened, filing a countercomplaint for declaratory judgment.[1]

The trial court granted General's motion for judgment on the pleadings, dismissed Art's countercomplaint, and denied motions for reconsideration. This appeal followed.

We affirm the trial court.

DECISION

Art's contends the event that activated McManus' coverage with General was the nondefense by Savoy in May 1991. Before that, says Art's, there could be no claim because Savoy was defending it against claims and lawsuits. Until May 1991, McManus' placement of coverage with an unauthorized insurer was not an event that would trigger coverage. Art's contends the prior acts exclusion is ambiguous and must be construed in favor of the insured. Any other construction, says Art's, would so narrow the coverage of the errors and omissions policy as to be against public policy.

General contends, and the trial court agreed, that the prior acts exclusion is clear and unambiguous. It means what it says. McManus violated the Insurance Code when he obtained insurance from Savoy, an unauthorized insurance company. That, says General, is the "act, error, or omission" covered by the errors and omissions policy. It follows, contends General, that Art's claim was excluded by the policy.

To guide us in our decision, we visit some of the general rules of insurance contract construction.

■ Insurance policies are contracts. Policies should be construed as other contracts are construed. *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7.

If a provision of an insurance policy can reasonably be said to be ambiguous, it will be construed in favor of the insured. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921.) If the provisions of the policy are clear and unambiguous, there will be no need for construction and the provisions will be applied as

---

[1]Art's is a claimant against McManus in another lawsuit, asserting the statutory liability of McManus for placement of insurance with an unauthorized company. McManus tendered the defense of that action to General.

written. *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.

All the provisions of the insurance contract, not just an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.

In applying the rules of interpretation, words in the policy should be given their plain and ordinary meaning, and the court should not search for an ambiguity where there is none. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203.

A contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991, 436 N.E.2d 663.

The rules of construction do not require courts to reach strained or unreasonable interpretations which would have the effect of invalidating the contract between the parties. *JG Industries, Inc. v. National Union Fire Insurance Co.* (1991), 218 Ill. App. 3d 1061, 1066, 578 N.E.2d 1260.

■ With these principles in mind, we turn to the words of this insurance contract.

General's policy closely resembles a claims made policy. The major difference between a claims made policy and an occurrence policy is in the risk insured. In the occurrence policy, the risk is the occurrence itself. In the claims made policy, the risk insured is the claim brought by a third party against the insured. *Central Illinois Public Service Co. v. American Empire Surplus Lines Insurance Co.* (1994), 267 Ill. App. 3d 1043, 1048, 642 N.E.2d 723.

One of the purposes of a claims made policy is to allow the insurance company to easily identify its risk, allowing it to know in advance the extent of its claims exposure and thus compute its premiums with greater certainty. See *Central Illinois Public Service Co.*, 267 Ill. App. 3d at 1049.

■ General and McManus bargained for a claims made policy that contained an additional limitation—the prior acts exclusion. When an exclusion clause is relied on to deny coverage, its applicability must be clear and free from doubt. (*Gibraltar Casualty Co. v. Sargent & Lundy* (1991), 214 Ill. App. 3d 768, 574 N.E.2d 664.) An exclusion in an insurance policy serves the purpose of taking out persons or events otherwise included within the defined scope of coverage. *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 125, 294 N.E.2d 7.

When the parties place a valid limitation on the coverage in the insurance policy, the plain language of that limitation must be ef-

fectuated. (*Gray v. Great Central Insurance Co.* (1972), 4 Ill. App. 3d 1084, 1086, 283 N.E.2d 261.) Our courts will enforce clearly drawn exclusions. *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.* (1992), 240 Ill. App. 3d 598, 608 N.E.2d 155.

■ The policy in this case was freely entered into by General and McManus. Art's can stake no broader claim. It is true that the prior acts exclusion smacks of occurrence coverage, but that is what the parties to the contract intended. The language of the exclusion is clear and precise. It did not affect the time for the making of claims under the policy. Rather, the exclusion narrowed the arena for McManus' "act, error, or omission" that might give rise to a claim.

We find nothing ambiguous in the prior acts exclusion. If we accept Art's view that it must apply to the time when Savoy's lawyer withdrew, we would be reading the exclusion out of existence. We will not do that.

It would distort language and logic to hold that McManus' "act, error, or omission" took place in 1991. It clearly did not. It happened when he placed Art's with an unauthorized insurer. That was a serious violation of the Insurance Code, justifying harsh administrative penalties. See *Cherington v. Selcke* (1993), 247 Ill. App. 3d 768, 617 N.E.2d 514.

We find nothing in the Insurance Code that would require a different reading of the prior acts exclusion. Nor do we believe the narrowed coverage that resulted from the exclusion violates any notion of public policy.

The New Jersey case relied on by Art's, *Sparks v. St. Paul Insurance Co.* (1985), 100 N.J. 325, 495 A.2d 406, reflected an objective "reasonable expectations" test that has been rejected by the courts of this State. (See *Insurance Co. of North America v. Adkisson* (1984), 121 Ill. App. 3d 224, 228, 459 N.E.2d 310.) In addition, the policy in *Sparks* was confined to acts of negligence taking place during the policy year. *Sparks* represents "very much a minority view." *Truck Insurance Exchange v. Ashland Oil, Inc.* (7th Cir. 1992), 951 F.2d 787, 791.

If McManus wanted protection against old occurrences, it could have obtained occurrence coverage. The claims made policy, with its short window of retroactivity, is intended to limit the temporal universe of fault. That is what McManus bought and that is what it must live with. So must Art's.

Nothing in *Russ-Field Corp. v. Underwriters at Lloyds* (1958), 164 Cal. App. 2d 83, 330 P.2d 432, cited by Art's, affects our conclusion. The policy in that case did not contain a prior acts exclusion that was anywhere near the exclusion in this case. When a policy contains

an explicit limitation on coverage, as does the policy in this case, "this language must be effectuated." *Stiefel v. Illinois Union Insurance Co.* (1983), 116 Ill. App. 3d 352, 355, 452 N.E.2d 73.

There are no questions of fact reflected by the pleadings in this case. The trial judge properly proceeded to construe the policy and determine which party was entitled to judgment on the pleadings. (See *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7.) We agree that General was entitled to judgment against McManus as a matter of law. Art's countercomplaint was properly dismissed.

CONCLUSION

We affirm the trial court's judgment on the pleadings in favor of General Insurance Company of America and against Robert B. McManus, Inc. We also affirm the trial court's dismissal of the countercomplaint filed by Art's Transportation, Inc., Windy City Coaches, and Art's Special Services, Inc.

Judgment affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.