WILLIAM MANN *et al.*, Plaintiffs-Appellees, *v.* BERNARD MANN, Defendant
—(CONTINENTAL CASUALTY COMPANY, Garnishee-Appellant.)

(No. 54272; ⬛)

First District—May 14, 1971.

*Rehearing denied July 13, 1971.*

Tom L. Yates, of Chicago, (Carl E. Abrahamson and Frederic L. Goff, of counsel,) for appellant.

Hoffman and Davis, of Chicago, (Maurice L. Davis and Alvin L. Kruse, of counsel,) for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Continental Casualty Company (hereinafter "Continental") appeals from the entry of a summary judgment entered in favor of the plaintiffs for $63,392.26. Plaintiffs had recovered a judgment against defendant, an attorney-at-law, for alleged negligence in the performance of his duties as their counsel. Plaintiffs then instituted garnishment proceedings against Continental which had written a professional liability insurance policy in favor of defendant. Subsequently summary judgment was entered against Continental, from which it appeals.

We summarize the facts based on the pleadings, affidavits, depositions and exhibits.

In 1960 the defendant, an attorney-at-law admitted to the practice in Illinois in 1947, represented plaintiffs, who are his parents, in connection with their purchase for $35,000 of a parcel of real estate consisting of four stores and a six room apartment located at 1147-1151 North Pulaski Avenue. At the time of the purchase defendant advised plaintiffs that title to the real estate should be held in the name of a bank as trustee and that he should be named as beneficiary under the trust to hold the beneficial interest for their benefit. Plaintiffs accepted defendant's advice and defendant arranged for the creation of a trust agreement in which he was designated as beneficiary. Title to the real estate was then transferred to the bank as trustee under the trust agreement. Defendant then proceeded

to collect rents for his parents, sign leases in his own name, bring suits for rent in his own name and arrange for insurance.

In May 1964 plaintiffs' real estate was sold for $191.41 to Bonded Municipal Corporation at a tax sale because of the non-payment of the first installment of a special assessment levied against the property. Plaintiffs claimed they were not aware of the tax sale.

On or about November 2, 1966, Bonded Municipal delivered a notice to defendant and to the bank, as trustee, stating that on May 12, 1964, Bonded Municipal had purchased the property at the sale; that the period of redemption would expire on February 23, 1967; and if redemption were not made, then on February 24, 1967, it would apply to the Circuit Court of Cook County for the issuance of a tax deed to plaintiffs' real estate. The bank also forwarded its copy of the notice to defendant on November 4, 1966.

Defendant did not advise plaintiffs of his receipt of the aforementioned notices from Bonded Municipal Corporation or the bank, not of the facts related in the notices, nor did he appear on behalf of plaintiffs before the Circuit Court on February 24, 1967, in the proceedings in which application was made for the issuance of a tax deed to plaintiffs' real estate. Further, defendant also did not appear in behalf of plaintiffs before the Circuit Court on April 12, 1967, at which the court ordered that a tax deed to plaintiffs' real estate be issued to S.A.S. Co. which had taken an assignment from the original tax purchaser. A tax deed conveying plaintiffs' real estate was thereafter issued to S.A.S. Co. and filed with the Recorder of Deeds.

Plaintiffs, in their complaint filed on June 19, 1967, sought to recover damages from their son, the defendant, for the loss of their real estate caused by defendant's following failures to fulfill his duty to them as their attorney: (1) to inform them of his receipt of the notice from the tax purchaser within a reasonable time prior to February 24, 1967, the date the notice was returnable in court, and (2) to represent them on February 24, 1967, and April 12, 1967, before the Circuit Court of Cook County in the proceedings in which the issuance of a tax deed to plaintiffs' real estate was ordered.

A Lawyer's Professional Liability Policy was applied for and issued to defendant by Continental for a policy period of November 15, 1966,[1] to November 15, 1969. The policy provided for a limit of liability of $300,000 for each claim, subject to a deductible amount of $500 as to each claim and it included an agreement by Continental to defend actions brought

---

[1] This was thirteen days after notice to defendant of the tax sale, the approaching expiration of the period of redemption, and that if redemption were not made the purchaser at the tax sale would apply for a tax deed.

against defendant to recover damages for professional errors. On June 6, 1967, in response to a notice of claim by the defendant, Continental informed defendant by letter that it disclaimed any obligation to him in the matter of the claim against him by his parents, and he engaged his own counsel. On June 23, 1967, defendant's counsel forwarded a copy of the summons and complaint in this action to Continental and demanded that it assume the defense of defendant. Defendant's counsel received a letter from Continental dated July 11, 1967, refusing to assume the defense and reaffirming the position taken in its letter of June 6, 1967, to defendant, that it had no obligation to him in that regard because the policy provided no coverage against the claim.

On July 18, 1967, defendant's counsel forwarded to Continental a copy of the appearance and answer filed by him in this action on behalf of defendant. On October 25, 1967, plaintiffs filed a motion for summary judgment against defendant on the issue of his negligence and the issue of his liability to plaintiffs, and on November 6, 1967, defendant's counsel forwarded to Continental a copy of plaintiffs' reply to defendant's answer and copies of plaintiffs' motion for summary judgment and the answer of defendant to that motion.

On November 20, 1967, a summary judgment as to liability was entered against defendant. Subsequently the issue of plaintiffs' damages was tried and a judgment in the amount of $60,000, plus costs, was entered against defendant.

Plaintiffs then instituted garnishment proceedings against Continental (hereafter "Garnishee") based on garnishee's indebtedness to defendant under the policy of insurance issued by it to him. On February 26, 1969, plaintiffs filed a motion for summary judgment against garnishee, supported by affidavits. Garnishee thereafter filed counter-affidavits and depositions in opposition to plaintiffs' motion for summary judgment. On May 16, 1969, summary judgment was entered against garnishee in favor of plaintiffs in the amount of $59,500 (the amount of plaintiffs' judgment against defendant less the deductible amount provided for in the policy issued by garnishee to defendant) plus $3,892.26 in interest. Garnishee appeals from the summary judgment.

*Opinion*

Garnishee contends that the entry of the summary judgment was improper since there were actual disputes as to five questions of fact. The first three include:

 1. Coverage never attached to plaintiffs' claim against the defendant and therefore there was no obligation on garnishee to defend;

 2. Plaintiffs' loss arose from the conduct of a business enterprise

controlled by the defendant acting in a fiduciary capacity; and
3. The liability of the defendant did not arise out of his performance of professional services for others in his capacity as a lawyer.

Plaintiffs contend that these defenses are based on provisions of the insurance policy defining and limiting its coverage. They argue that since garnishee committed a breach of its duty under the policy by refusing to defend the action brought by them against the defendant, these defenses are not now available and it is estopped to assert them, citing *Country Mutual Insurance Co. v. Murray,* 97 Ill.App.2d 61; *McFadyen v. North River Insurance Co.,* 62 Ill.App.2d 164; and *Sims v. Illinois National Casualty Co. of Springfield,* 43 Ill.App.2d 184. These cases hold that an insurer is estopped to rely upon exclusions contained in the policy if it has refused to defend a claim which was within, or potentially within, the coverage of the policy.

However, an exception to this principle is stated in *McFadyen v. North River Insurance Co., supra,* 171:

"If the policy measured against the claim for injury does not, by its terms, afford coverage, or if there is no policy in effect at all, or if the company has not been afforded an opportunity to defend, in those situations the company is not estopped from asserting policy exclusionary defenses by its refusal to defend."

The first issue presented is whether under one of the "Insuring Agreements" and the allegations of the complaint, the policy by its terms measured against the claim precludes coverage.

The policy dated November 15, 1966, provided in Articles I and IV:

"I. Coverage

To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages resulting from any claim made against the insured arising out of the performance of professional services for others in the insured's capacity as a lawyer or a notary public and caused by any act, error or omission of the insured or any other person for whose acts the insured is legally liable.

IV. Policy Period, Territory

This policy applies only to acts, errors or omissions which occur within the United States of America, its territories or possessions, or Canada (a) during the policy period and then only if claim is made or suit is brought within fifteen years after the end of the annual policy period in which the act, error or omission occurred, or (b) prior to the effective date

of the policy and then only if claim is made or suit is brought during the policy period *provided that no insured, at the effective date of this policy,* had any knowledge of a pending claim against any insured, *had any knowledge of any claim which might be made against any insured or had any knowledge of any circumstance which might reasonably be expected to create a claim against any insured."* [Emphasis supplied.]

The pertinent paragraphs of the complaint alleged:

"2. In the said purchase transaction, plaintiffs were represented by the defendant, who was then, and at all times since has been, an attorney at law admitted to practice as such in Illinois.

4. The beneficial interest under said trust agreement has at all times been held by defendant, for the use and benefit of plaintiffs as his clients, and as an incident of defendant's representation of plaintiffs as their attorney at law.

6. A special assessment (City of Chicago, warrant number 57096) was levied against said premises; and such special assessment was payable in five installments. The first installment was not paid; and because of such non-payment, said premises were sold, at tax sale, on May 13, 1964, for $191.41, to Bonded Municipal Corporation. Plaintiffs were unaware of said sale, and did not learn thereof until after the recording of the tax deed referred to in paragraph eight hereof, following.

7. On or about November 2, 1966, Bonded Municipal Corporation delivered a notice in the form of which a copy is attached as exhibit "B" hereto, to defendant, and to Exchange National Bank of Chicago as trustee under trust number 11544. After said Exchange National Bank of Chicago, as such trustee, received a copy of such notice, it did, on November 4, 1966, transmit such copy to defendant. Defendant did not advise plaintiffs of his receipt of such notice, either from Bonded Municipal Corporation or from said Exchange National Bank of Chicago, as such trustee, until after the time of the issuance of the tax deed referred to in paragraph eight hereof, following. No redemption was effected from the sale referred to in said notice; and defendant did not appear before the Circuit Court of Cook County, Illinois, on February 24, 1967, in opposition to the application of Bonded Municipal Corporation (which was then made) for the issuance of a tax deed conveying to it the hereinabove described [sic] premises.

8. On April 12, 1967, S.A.S. Co., having substituted for Bonded Municipal Corporation, applied to the Circuit Court of Cook County, Illinois (in the proceedings bearing general number 66

CO TD 1462) for the issuance to it of a tax deed conveying said premises; and an order was then entered by said court in accordance with said application. Defendant did not appear in opposition to said application. A tax deed conveying said premises was thereafter issued to S.A.S. Co., and such deed was filed for record in the office of the recorder deeds of Cook County, Illinois, on April 24, 1967."

It is apparent from the complaint that thirteen days prior to the issuance of the policy defendant had knowledge that the property of which he was trustee for the benefit of plaintiffs, for whom he was acting as attorney, was subject to tax bills issued for a special assessment; that the property had been sold for non-payment of said special assessment in May 1964 for $191.41; that he had not paid the assessment out of the rents collected; that the period of redemption was to expire on February 23, 1967; and that he had failed to notify plaintiffs of the special assessment or of the sale for its non-payment. Thus, prior to his application for, and the effective date of the policy, defendant had knowledge of a claim which might be made against him and of a circumstance which might reasonably be expected to create a claim against him.

Aside from the matter of defendant's failure to appear in court on February 24, 1967, the notice served on defendant on November 2 advised of the tax sale, the fact that the period of redemption was running out, and that a tax deed would then be applied for. As attorney, therefore, defendant had the obligation to notify plaintiffs immediately of these facts. (He also had that obligation probably under trust relationship.) In *Baker v. Humphrey*, 101 U.S. Reports 494, 500, the court stated:

"It is the duty of an attorney to advise the client promptly whenever he has any information to give which it is important the client should receive."

■■ Thus, within the thirteen day period prior to taking out the policy, defendant failed in his duty to his clients and made a professional error of omission within the terms of the policy which ripened into claim after the policy was issued. The fact that defendant continued to err after issuance of the policy does not exclude that which had already taken place. Therefore garnishee was not estopped from asserting the defense of non-coverage by its refusal to defend.

■■ Plaintiffs' brief states that:

"In his deposition defendant repeatedly stated that he was not aware of the tax sale or the application to the court for a tax deed until 1967, after the tax deed had been filed of record."

However, in his sworn answer defendant admitted receiving in November

1966 the notices from the tax buyer and the bank; thus an issue of fact was created and summary judgment should not have been entered.

■■ Garnishee next contends that the following two defenses raised issues of fact:

"1. Plaintiffs' loss arose from the conduct of a business enterprise controlled by the defendant acting in a fiduciary capacity.

2. The liability of the defendant did not arise out of his performance of professional services for others in his capacity as a lawyer."

We find that defendant is estopped from urging these defenses since under the facts of legal representation alleged in the complaint there was, as to these two issues, potentially a case within the coverage of the policy and defendant refused to defend. See *McFadyen, supra,* and *Country Mutual, supra.*

Garnishee's fourth contention is that defendant misrepresented in his application for a policy that he was not aware of any act or omission which might give rise to a claim or suit arising out of his professional services. Under the facts hereinabove discussed we believe an issue of fact was created.

■■ Plaintiffs argue that the garnishee waived its right to forfeit the policy based on the alleged misrepresentation in the application. We find no evidence of a forfeiture of the policy. After investigating plaintiffs' claim, garnishee continued to recognize the validity of the policy. In a letter dated June 6, 1967, garnishee wrote in part:

"In view of the above, the company disclaims any responsibility to you in this instance.

We regret our inability to be of any further service to you in this matter and suggest that you take steps to protect yourself in this matter.

Very truly yours,
Fred A. Smith, Jr.
Claim Supervisor
FAS:dc"

Again on July 11, 1967, garnishee in another letter recognized the continuation of the policy by reaffirming its earlier position taken on June 6, 1967. In their brief plaintiffs answer their own contention. After citing Paragraph IV—"Insuring Agreements"—they state:

"By virtue of this provision, the policy applied to an act of professional negligence occurring prior to the policy period, but only if defendant had no knowledge of the negligence as of the effective date of the policy. (It should be noted that this provision does not, as garnishee suggests, render the policy absolutely and totally void

if the insured has knowledge of an act of negligence which occurred prior to the effective date of the policy—*it merely provides that there is no coverage for that particular act of negligence.*)" [Emphasis supplied.]

Finally garnishee contends that the judgment against defendant was obtained by collusion between plaintiffs and defendant and therefore could not be used as the basis for a garnishment proceeding. Garnishee relies primarily on the affidavit of Tom Yates, attorney for the garnishee, and other deposition transcripts on file. Plaintiffs argue, however, that garnishee's primary reliance on the affidavit of Tom Yates to show alleged collusion is misplaced. They claim that Mr. Yates' affidavit does not meet the requirements imposed by Supreme Court Rule 191(a).[2]

■■ Plaintiffs made no objection to the affidavit of Tom Yates. The question of sufficiency of such affidavit may not be raised for the first time on review. *Pekin Memorial Hospital v. Schilling*, 121 Ill.App.2d 473, and *Campione v. Henry C. Lytton & Co.*, 57 Ill.App.2d 147.

Garnishee claims that a reading of the affidavits and depositions filed by the parties shows (1) that the defendant, the son of the plaintiffs, failed to interpose any *bona fide* defense to the motion for summary judgment filed by plaintiffs on the issue of liability; (2) that the defendant also failed to interpose any defense in the subsequent trial on the issue of damages; (3) that there was an agreement, executed the same day suit was filed by the plaintiffs against defendant, between the attorney for Bertha and William Mann and the S.A.S. Co., by which plaintiffs were to retain possession of the property, "realize and retain the income therefrom" and that the purchase price to be paid S.A.S. Co. was to be agreed upon by them. It further provided that if S.A.S. Co. terminated the agreement plaintiffs would pay the collected net income of the property to S.A.S. Co. An accompanying letter stated that a lawsuit had been filed by plaintiffs against Bernard Mann and that they intended to employ funds "which they anticipate they may realize through their suit" to reacquire the property; and (4) that the sole owner of S.A.S. Co., in

---

[2] Ill. Rev. Stat. 1967, ch. 110A, sec. 191(a):

"*Requirements.* Affidavits in support of and in opposition to a motion for summary judgment and affidavits under section 48 of the Civil Practice Act shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used."

referring to plaintiffs' property stated: "I'll break this deed off in Continental's ass."

In *Shapiro v. Di Guilio*, 95 Ill.App.2d 184, 189, the court stated:

"The defense, if proven, was one which would have defeated the instant action. A judgment obtained by collusion or fraud is open to attack whenever and wherever it is sought to be enforced, even in a collateral proceeding. Freeman, Judgments, § 318. 1 Black, Judgments, § 293. Our court has consistently held that when a judgment is procured through fraud and collusion for the purpose of defrauding some third person, the third person may show the fraud and collusion collaterally and escape the burdens and injuries thus thrust upon him."

Plaintiffs argue that the relationship of the parties is immaterial and that the agreement between S.A.S. Co. and them is "devoid of the surreptitious overtones suggested by garnishee."

██ We believe that garnishee's pleadings and affidavits raise genuine issues of material fact. Therefore, we find that it was error for the trial court to grant summary judgment in favor of plaintiffs. See *Barkhausen v. Naugher*, 395 Ill. 562, and *Smith v. Travelers Insurance Co.* (1971), 131 Ill.App.2d 476, 266 N.E.2d 695.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and ENGLISH, J., concur.