THIRD DIVISION

November 15, 2000

(
NUNC
 
PRO
 
TUNC
 March 31, 2000)

No. 1--98-0777

CONTINENTAL CASUALTY COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

COREGIS INSURANCE COMPANY, ) Honorable

) Ronald Riley,

Defendant-Appellant. ) Judge Presiding.

MODIFIED ON DENIAL OF REHEARING

JUSTICE BURKE delivered the opinion of the court:

Defendant Coregis Insurance Company (Coregis) appeals from an order of the circuit court granting summary judgment in favor of plaintiff Continental Casualty Company (Continental) on its complaint for contribution from Coregis and ordering Coregis to pay $2 million to Continental for funds, which Continental paid in behalf of Coregis' insured, Clark Nuber & Company (Clark Nuber), in settlement of a securities fraud class action against Clark Nuber, and denying its motion for partial summary judgment.  On appeal, Coregis contends that the trial court erred in granting Continental summary judgment because:  (1) the settlement was covered under a policy issued by Continental to Clark Nuber (Continental policy), since a claim was made during Continental's policy period, and a question of fact existed as to whether a provision of Continental's policy, "Exclusion O," applied; (2) a policy issued by Coregis to Clark Nuber (Corgeis policy) covered only the portion of the settlement which represented payment for Clark Nuber's liability for its audit of its client's (Midisoft Corporation) recognition of revenue for two original equipment manufacturers' (OEM) contracts and, therefore, the trial court erred in finding that its policy covered the entire settlement; (3) even if Coregis' policy covered the settlement, a genuine issue of material fact existed as to what amount, if any, of the settlement should be allocated to it; and (4) alternatively, if Coregis' policy covered the settlement, it was entitled to a declaration that Continental's policy also applied and to a pro rata allocation of the settlement.  For the reasons set forth below, we affirm.

International Insurance Company issued a "claims made" accountants' professional liability policy to Clark Nuber, a certified public accounting firm with offices in Bellevue, Washington, for the policy period of June 4, 1993, to June 4, 1994.  The policy was assumed by Mt. Airy Insurance Company, which later changed its name to Coregis Insurance Company.  The policy provided, in part:

"If during the POLICY PERIOD, any INSURED first becomes aware of a potential CLAIM (i.e., any act, error or omission which might reasonably be expected to be the basis of a CLAIM against any INSURED under this policy), the insured must give immediate written notice of such act, error or omission to the Company during the POLICY PERIOD.  Any CLAIMS subsequently made against any INSURED arising out of that act, error or omission shall be considered to have been made and reported during the POLICY PERIOD."

The policy also provided, under "Claims Expenses:"

"Two or more CLAIMS arising out of a single act, error or omission or a series of related acts, errors or omissions shall be treated as a single CLAIM."

Continental subsequently issued a claims made accountants' professional liability policy to Clark Nuber for the policy period of June 4, 1994, to June 4, 1995, which provided, in part:

"We will not defend or pay, under the Coverage Part, for:

O.  Any wrongful act which happened prior to the 'effective date' shown on the declarations; if on such date you knew or could reasonably foresee that such wrongful act might be the basis for a claim."

Prior to the issuance of Continental's policy, Midisoft. a manufacturer of interactive multimedia software, retained Clark Nuber to audit its financial statements for fiscal years 1991, 1992, 1993 and for the first quarter of 1994.  Clark Nuber audited Midisoft's December 31, 1993, year-end financial statements and reviewed its unaudited 1994 first quarter financial statements; it did not audit Midisoft's 1994 unaudited second, third or fourth quarter financial statements, nor its December 31, 1994, year-end financial statements.

In 1994, while Midisoft was in the process of planning a second public offering of its stock, the underwriter for the proposed public offering retained Coopers & Lybrand, an accounting firm, to assist in its "due diligence investigation." Coopers & Lybrand raised a question about Clark Nuber's "interpretation of relevant professional standards for the recognition of revenue" with respect to the financial statements audited by Clark Nuber in 1993.  As a result, Clark Nuber sent Coregis the following letter, dated June 3, 1994, one day before Coregis' policy was to expire:

"Our firm has recently learned of circumstances which may result in a claim being made against our firm and/or certain shareholders of our firm.  *** [W]e are hereby notifying Coregis to comply with the policy's requirement that we report the possibility of a claim within the current policy period.  By making this report, we understand that any future claim arising out of these circumstances will be covered by the current policy even if the claim itself is asserted after the present policy expires. ***

A publicly held software development Company, Midisoft Corporation, is in the process of planning its second public offering. *** During the process, [a] question [was raised] about the interpretation of relevant professional standards for the recognition of revenue by such a company, and, in an effort to obtain clarification, advised the software company to request concurrence of the SEC for the company's past accounting practices in the recognition of such revenue.  That question, in effect, raised a potential issue with respect to the financial statements audited by our firm for the fiscal year ending December 31, 1993, which were included in the annual SEC 10K filing.  ***  The company, with advice from both Coopers [& Lybrand] and our firm, has already discussed this issue with the SEC accounting staff.  Our firm was told by one of the chief accountants last Friday, May 27, that the SEC accounting staff had concluded there was no problem.  ***

*** However, since our current policy expires on June 4, we wanted to report these circumstances in the event that a future claim is asserted so that the current policy will cover it."

In November 1994, Midisoft retained Price Waterhouse as its  auditor, replacing Clark Nuber.  In July 1995, Midisoft announced that Price Waterhouse was restating Midisoft's 1994 first, second and third quarter financial statements, and its 1994 year-end and 1995 first quarter financial statements.  Midisoft shareholders subsequently sued Midisoft in Seattle, Washington, alleging Midisoft issued false and misleading financial statements concerning the company's financial position.

On December 18, 1995, Midisoft shareholders also filed a securities fraud class action in Washington against Clark Nuber, entitled 
Jackson Smith, et al. v. Clark Nuber & Co., P.S.
 (the 
Smith
 action).  The 
Smith
 complaint alleged that "Midisoft's publicly issued financial statements for the year ending December 31, 1993 as well as the quarters ending March 31, 1994, June 30, 1994 and September 30, 1994 including the financial statements included in Midisoft's Prospectus for its secondary offering of stock were materially false and contributed to the artificial inflation of Midisoft's stock price and thus caused the Class members damage when they paid an inflated price for Midisoft stock."  The complaint further alleged that Midisoft overstated its revenue and earnings during all of 1993 and the first three quarters of 1994 as a result of improper accounting practices by Midisoft concerning revenue recognition, failure to provide adequate reserves for uncollectible accounts receivable, capitalizing, instead of expensing, software and advertising costs, and improper accounting for stock option compensation and the related tax benefit.  The complaint also alleged that Clark Nuber participated "in the development of the accounting treatments essential to the irregularities in Midisoft's statements," and "falsely represented, in Midisoft's annual form 10-K which was filed *** for the year 1993, that Midisoft's financial statements complied with *** Generally Accepted Auditing Standards during the course of the audit," and assisted in developing the strategies for accounting for Midisoft's stock option plan, which in turn had become in part, the basis of Midisoft's quarterly reports to shareholders and press releases containing financial information."

On December 20, 1995, Coregis wrote to Clark Nuber and reserved its rights to decline to defend and/or indemnify Clark Nuber with regard to its work for Midisoft.  In February 1996, Coregis agreed to participate in the defense of Clark Nuber in the 
Smith
 action, but reserved its "rights or defenses."  On February 22 and 23, 1996, a court-ordered mediation was held in Seattle, Washington.  According to Continental, in a letter dated February 23, 1996, "Coregis withdrew its reservation of rights [regarding the 
Smith
 action], acknowledged coverage under its policy for the complaint, and acknowledged that it received written notice of the claim on June 3, 1994."  In November 1996, a final settlement was approved by the Washington court and judgment was entered; Continental paid $2 million in behalf of Clark Nuber, reserving its rights to pursue contribution from Coregis, and Coregis paid $200,000. 

In December 1996, Continental filed a one-count complaint, seeking contribution from Coregis for the settlement amount it paid in the 
Smith
 action.  Continental alleged that "all of the alleged wrongful acts by Clark Nuber occurred during Coregis' policy period" and notice of the claim was made and reported to Coregis during Coregis' policy period" pursuant to the "Reporting of Potential Claims" provision in Coregis' policy."  Continental maintained that the June 3, 1994, letter sent by Clark Nuber to Coregis gave notice to Coregis and, since Coregis admitted that the Midisoft claim was made and reported during the Coregis policy period, the 
Smith
 settlement was covered under the terms of Coregis' policy.  Continental also alleged that the damages flowing from Midisoft's "revenue problem" and "tax problem" arose as a result of the wrongful acts of Clark Nuber committed prior to June 4, 1994, during Clark Nuber's 1993 audit of Midisoft's annual financial statements, and were solely during Coregis' policy period.  Continental further alleged that the 
Smith
 claims fell under Exclusion O, a "prior acts" exclusion provision of its policy, and, therefore, its policy did not apply.

In May 1997, Continental filed a motion for summary judgment in which it made arguments similar to the allegations contained in its complaint.  Continental additionally argued that because Coregis did not have a reservation of rights at the time of the 
Smith
 settlement, Coregis was estopped from denying its obligation to pay the settlement and, therefore, summary judgment was proper because the only issue was whether the 
Smith
 complaint was within the scope of Coregis' policy.

Coregis then filed the affidavit of Jeffrey Goldwater, a partner in the law firm repesenting Coregis, and requested discovery.  In his affidavit, Goldwater stated that Continental's motion for summary judgment raised issues which required discovery of material facts by Coregis as to the "scope of the notice provided to Coregis and the relationship of the claims asserted in the [
Smith
 action] to the acts upon which notice was provided to Coregis." 

Continental moved to stay discovery, arguing that only an "objective analysis" of the 
Smith
 complaint, the language of the parties' policies, Coregis' notice letter, and Coregis' withdrawal of its reservation of rights letter were necessary to resolve the issues of Continental's complaint as a matter of law and that no factual inquiry was permissible.  In response, Coregis argued that the issues raised in Continental's complaint could not be resolved as a matter of law on the limited record.  Coregis maintained that the 
Smith
 complaint alleged errors that were unrelated to the errors referred to in the notice given by Clark Nuber to Coregis, which only notified Coregis of a "revenue recognition" issue relating to two OEM contracts, the ACS and Rex Tec contracts.  Coregis also argued that it was entitled to discovery to counter the 
Smith
 allegation "that Clark Nuber was somehow responsible for establishing the accounting practice of Midisoft as opposed to merely serving as an outside auditor."  The trial court denied Continental's motion to stay discovery.

In October 1997, Coregis filed its response to Continental's motion for summary judgment, arguing that issues of material fact existed whether Coregis' or Continental's policy, or both, provided coverage for the 
Smith
 settlement, thereby precluding summary judgment.  Coregis maintained that while "it was undisputed that Coregis received notice of a potential claim by way of a letter," an issue existed as to the scope of Clark Nuber's June 3, 1994, notice letter.  Coregis stated that Midisoft wrote to the SEC regarding the ACS and Rex Tec contracts and also sent a letter to Coregis, dated June 3, 1994, that "was intended to inform [Coregis] of the potential for a claim against Clark Nuber if the SEC disagreed with Midisoft's accounting for the recognition of revenue for the ACS and Rex Tec contracts."  Coregis also stated that the SEC informed Midisoft in a letter dated July 1, 1994, that it would take no action as to Midisoft's recognition of revenue for the ACS and Rex Tec contracts and that the potential claim reported to Coregis was resolved.

Coregis also argued that no claim was made against Clark Nuber until after Coregis' policy lapsed on June 4, 1994.  Coregis conceded that it had waived any argument that the June 3, 1994, letter did not trigger the discovery clause in its policy, but argued that triable issues of fact existed as to which acts, errors or omissions Clark Nuber was "subjectively" aware, and provided notice, of during the Coregis policy, and what amount, if any, of the settlement should be allocated to those alleged negligent acts, errors or omissions.  Coregis further argued that the affidavit of Ronald Rauch, a Clark Nuber partner in charge of Midisoft, contradicted Continental's position that the notice letter related to "all [of Clark Nuber's] work for Midisoft in general" and demonstrated the existence of a factual dispute because Rauch's affidavit stated that the only potential claim of which Clark Nuber was aware of at the time of its notice letter related to the recognition of revenue for the ACS and Rex Tec contracts. 

Coregis further argued that a genuine issue of material fact existed as to whether Continental's "prior knowledge" provision, Exclusion O, applied because there was no evidence that Clark Nuber knew or could have foreseen on June 4, 1994, that each wrongful act ultimately alleged in the 
Smith
 complaint
 might be the basis for a claim. Coregis also argued that it did not waive and was not estopped from asserting its defenses as a result of its February 23, 1996, reservation of rights letter.

On December 17, 1997, at the hearing on Continental's motion for summary judgment, the court asked Continental whether Clark Nuber's notice letter gave notice of a potential claim within Coregis' policy period and stated what the specific act, error or omission was "in terms of the obligation of the insured."  In response, Continental stated:

"Yes *** the notice letter gives notice of two things [
i
.
e
., that there was work being done on Midisoft's second public offering and Clark Nuber might be sued with respect to its auditing of Midisoft's 1993 year-end financial statements and the first quarter of 1994].  The complaint that was subsequently filed [the 
Smith
 action] is based on those two things, and that's where [
sic
] there's no facts at issue."

In response, Coregis stated to the court: 

" *** [Y]our Honor, this [
Smith
] complaint is much more than has been represented to.  It doesn't just concern a malpractice claim regarding the 1993 financial statements.  It lays out five distinct areas of wrongful acts and accounting problems by MidiSoft [
sic
] to which Clark Nuber allegedly participated and made misrepresentations regarding they involved distinct acts or omissions over a long period of time, and they involved distinct documents, not just the audited 1993 financial statements.

So what you essentially have here in our view *** is at least five separate claims that are asserted in the MidiSoft [
sic
] complaint.

***

So with that background those are the claims that were made in MidiSoft's [
sic
] suite [
sic
] against the insured, Clark Nuber.  Those are the claims that were settled."

Coregis further argued that Continental's Exclusion O, which provides that Continental will not defend or pay for any wrongful act, which happened prior to the policy date, if on such date the insured knew or could reasonably foresee that such act might be the basis for a claim, could not be met because there were multiple acts alleged prior and subsequent to June 4, 1994. Coregis also argued that Rauch's affidavit stated that, other than the revenue recognition issue raised with regard to the ACS and Rex Tec contracts, there was no evidence that all of the other allegations in the 
Smith
 complaint against Clark Nuber were acts that Clark Nuber knew or could reasonably have foreseen as potential claims.  With respect to Clark Nuber's notice letter, Coregis argued that the only specific potential claim identified in the letter pertained to the recognition of revenue of the two OEM contracts, and not an "act or omission *** about [a] public offering [or] not *** work in general" and "not anything in the 1994."  Coregis further argued that there was nothing stated in the notice letter about inadequate reserves for accounts receivable, capitalization of software and advertising costs, tax error, or improper accounting for stock options.  

In response, Continental argued that according to the notice letter, "[t]here's a sentence in [it] that says you're put on notice in case they get sued for the work they did in connection with the 1993 audit and because of work they did with the second public offering," and that "[a]ll of this stuff about OEM contracts and different things that they have produced in discovery just don't have anything to do with the notice that was actually given."  Continental pointed out that the "5 claims that Coregis talks about and says have nothing to do with Clark Nuber's 1993 audit of financial statements are allegations against Midisoft, not Clark Nuber, about what was wrong with Midisoft."  The trial court subsequently granted summary judgment in favor of Continental, finding that Coregis' policy provided coverage for the 
Smith
 settlement, and set the case for status regarding Continental's request for prejudgment interest and attorney fees.

 On January 15, 1998, Coregis filed a motion for partial summary judgment, seeking a declaration that Continental's policy, as a concurrent or overlapping policy, also covered the 
Smith
 settlement "and that the settlement should be allocated between [Continental] and Coregis, as a matter of law, based on the amounts paid by the parties at the time of the settlement" or, "[a]lternatively, the settlement should be reallocated between [Continental] and Coregis on a pro-

rata [
sic
] basis pursuant to the limits of liability contained in their respective policies."  Coregis' motion repeated arguments it had made in its response to Continental's motion for summary judgment.

At the status hearing, Continental informed the court that it was not pursuing its claim for prejudgment interest and attorney fees.  Coregis then argued that the court had not considered or ruled upon the issue of whether Continental's policy covered a portion of the 
Smith
 settlement and, pursuant to Coregis' motion for partial summary judgment, it sought a proration of the settlement between itself and Continental.  Continental responded that the court's ruling on December 17, 1997, that Coregis' policy covered the entire settlement, left no remaining issue as to whether Continental's policy provided coverage.  Continental further maintained that Coregis' motion for partial summary judgment was in fact a motion to reconsider, arguing that the motion was identical to the arguments contained in Coregis' response to Continental's motion for summary judgment, which the court considered at the December 17 hearing and ruled that Coregis' policy covered the 
Smith
 settlement.  Thereafter, the court entered an order continuing the matter "for a ruling by the court as to whether it [would] further consider Coregis' motion for partial summary judgment or enter a final order on the settlement amount in [Continental's] favor."   On February 17, the court denied Coregis' motion for partial summary judgment, characterizing it as a motion to reconsider.  The February 17 order was amended on February 19 to reflect the judgment amount of $2 million.  This appeal followed.

Coregis first contends that the trial court erred in granting summary judgment in favor of Continental because a genuine issue of material fact existed as to whether Clark Nuber's June 3, 1994, notice letter gave Coregis notice of 
all
 
the wrongful acts, errors or omissions claimed in the 
Smith
 action.  In order to determine the "scope of coverage" of Coregis' policy, 
Coregis argues that a proper interpretation of what "wrongful" acts Clark Nuber's notice letter provided to Coregis was dependent upon a consideration of disputed facts regarding Clark Nuber's "subjective" intent and awareness at the time of the letter and what amount of the 
Smith
 settlement, if any, could be attributed for the acts, errors or omissions of which Clark Nuber gave Coregis notice.  Coregis maintains that, based upon Rauch's affidavit, the notice letter gave Coregis notice only of a potential claim concerning the recognition of revenue for the ACS and Rex Tec contracts and, therefore, Coregis was only put on notice of a potential claim regarding these two contracts.

Coregis further asserts that Continental's policy covered the remaining 
Smith
 claims, most of which "had nothing to do with recognition of revenue," because the 
Smith
 complaint was filed against Clark Nuber during Continental's policy period.  Coregis also asserts that Exclusion O of Continental's policy barred coverage only for liability, if any, attributable to Clark Nuber's audit of Midisoft's recognition of revenue for the ACS and Rex Tec contracts.  Coregis maintains that since "the undisputed evidence demonstrated that Clark Nuber faced no exposure attributable to its audit of Midisoft's recognition of revenue for these contracts, Exclusion O did not bar coverage for any portion of the settlement."  Coregis also argues that Exclusion O did not preclude coverage because Continental had the burden, but failed to present any evidence to show that Clark Nuber had or could have foreseen prior to June 4, 1994, that "each wrongful act ultimately alleged in the [
Smith
] complaint might be the basis for a claim."

Continental contends that "whether the potential notice letter was sufficiently related to the 
Smith
 complaint for the Coregis policy to afford coverage" was a question of law for the trial court since "the notice letter, the 
Smith
 complaint and the relevant Coregis policy provision all speak for themselves."  Continental maintains that Coregis "attempts to create an issue of fact" by asserting that Clark Nuber did not intend to give Coregis notice of all
 of the claims alleged in the 
Smith
 action, but only those pertaining to the ACS and Rex Tec contracts.  Continental further argues that Clark Nuber's "subjective" intent and awareness when it sent its notice letter was irrelevant in determining whether the notice letter was sufficient to trigger coverage under Coregis' policy for the 
Smith
 claims and, similarly, that it was irrelevant "what amount of liability would have attached to different allegations in the 
Smith
 complaint."

Continental also argues that Clark Nuber's notice letter met all of the requirements of the Coregis policy because the letter put Coregis on notice that Clark Nuber might be sued for work it performed for Midisoft and that 
"all of the alleged negligence stemming from the alleged improper accounting treatments were based on alleged wrongful acts committed by Clark Nuber during the year-end 1993 audit and the first quarter 1994 review allegedly included in [Midisoft's] prospectus for the secondary offering."  Continental maintains, therefore, that Coregis' policy solely provided coverage for the 
Smith
 claims.  Lastly, Continental alternatively argues that even if all the acts in the 
Smith
 complaint were not precisely the same as the acts of which Clark Nuber gave notice to Coregis, the trial court's ruling should be affirmed based on the "related acts" provision of Coregis' policy.

The standard of review of a summary judgment ruling is 
de
 
novo
.  
McNamee v. State of Illinois
, 173 Ill. 2d 433, 438, 672 N.E.2d 1159 (1996).
(footnote: 1)  
A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits establish that no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law.  See 735 ILCS 5/2--1005(c) (West 1996); 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 530, 675 N.E.2d 897 (1996).  "The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion[;] there must be no genuine issue of 
material
 fact."  (Emphasis in original.)  
Federal Savings & Loan Insurance Corp. v. Burdette
, 718 F. Supp. 649, 653 (E.D. Tenn. 1989), citing 
Anderson v. Liberty Lobby, Inc.
, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505.

"It is well established that the 'claims made' or 'discovery' policy is characterized by coverage for negligent acts or omissions only if such are discovered during and brought to the attention of the insurer within the policy term."  
Graman v. Continental Casualty Co.
, 87 Ill. App. 3d 896, 899, 409 N.E.2d 387 (1980).  "The major difference between a claims made policy and an occurrence policy is in the risk insured.  In the occurrence policy, the risk is the occurrence itself.  In the claims made policy, the risk insured is the claim brought by a third party against the insured."  
General Insurance Co. of America v. Robert B. McManus, Inc.
, 272 Ill. App. 3d 510, 514, 650 N.E.2d 1080 (1995), citing 
Central Illinois Public Service Co. v. American Empire Surplus Lines Insurance Co.
, 267 Ill. App. 3d 1043, 1048, 642 N.E.2d 723 (1994).
  "One of the purposes of a claims made policy is to allow the insurance company to easily identify its risk, allowing it to know in advance the extent of its claims exposure and thus compute its premiums with greater certainty."  
McManus
, 272 Ill. App. 3d at 514.

"The construction of an insurance policy is a matter of law."  
Maryland Casualty Co. v. Chicago & North Western Transportation Co.
, 126 Ill. App. 3d 150, 155, 466 N.E.2d 1091 (1984).  Where no factual disputes exist, but only the interpretation of the content of an insuring agreement and notice, the sufficiency of a notice letter is determined as a matter of law based upon the content of the letter and the allegations contained in a subsequently filed complaint.  
Continental Insurance Co. v. Metro-Goldwyn-Mayer, Inc.
, 107 F.3d 1344, 1346 (9
th
 Cir. 1997)
.  A proper analysis of the sufficiency of notice is whether the notice given objectively complied with the potential claim notice provision of a policy.  
Federal Deposit Insurance Corp. v. Mijalis
, 15 F.3d 1314, 1335 (5
th
 Cir. 1994).  
"The insured need not provide notice of every possible event out of which coverage may arise, but only of claims made."  
University of Illinois v. Continental Casualty Co.
, 234 Ill. App. 3d 340, 364, 606 N.E.2d 1235 (1992).  Whether a claim is within a policy's coverage is determined by the nature of a third party's claim.  
U.S. Gypsum Co. v. Admiral Insurance Co.
, 268 Ill. App. 3d 598, 624,, 648 N.E.2d 1220 (1994); 
Dayton Independence School District v. National Gypsum Co.
, 682 F. Supp. 1403, 1406 (E.D. Tex. 1988)
.   "Nothing said at a date after the notice letter can lessen the notice given to and received by the insured."  
Burdette
, 718 F. Supp. at 655.  After a case has been settled, the plaintiff need only prove that the allegations in the underlying complaint are covered under the policy language, and the plaintiff does not have to show that the allegations could actually have been proven at trial.  
Public Utility District No. 1 of Klickitat County v. International Insurance Co.
, 124 Wash. 2d 789, 881 P. 2d 1020, 1032 (Wash. 1994)
.  

We find that because the content of the notice letter in the present case was not disputed, but only its interpretation, no question of fact existed as to the sufficiency of the letter and, in fact, Coregis concedes that the letter was sufficient to trigger coverage under its policy.  We thus proceed to determine whether all of the 
Smith
 claims were covered under the language of the pertinent Coregis policy provision.
  We find that they were.

As indicated above, Coregis' 
CLAIMS MADE POLICY PROVISION stated that if Clark Nuber, the insured, became "aware of a potential claim (
i.e., any act, error or omission which might reasonably be expected to be the basis of a claim against any insured under the policy)," it was required to give immediate notice to Coregis.  The policy further provided that any subsequent claims made against Clark Nuber, "arising out of that act, error or omission shall be considered to have been made and reported during the policy period."

Clark Nuber's NOTICE LETTER
 stated, in pertinent part, that Midisoft was "
in the process of planning its second public offering
,"
 a question was raised "about the interpretation of relevant professional standards for the recognition of revenue by such a company," and that "[t]hat question, in effect, 
raised a potential issue with respect to the financial statements audited by our firm for the fiscal year ending December 31, 1993, which were included in the annual SEC 10K filing
."  (Emphasis added.)

Paralleling the notice letter statements,
 the 
SMITH
 COMPLAINT
 alleged that MIDISOFT'S
 "publicly issued 
financial statements for the year ending December 31, 1993 as well as the quarters ending March 31, 1994, June 30, 1994 and September 30, 1994
 including the 
financial statements
 included in Midisoft's Prospectus 
for its secondary offering of stock
 
were materially false and contributed to the artificial inflation of Midisoft's stock price."  (Emphasis added.)  The complaint listed four improper accounting practices by Midisoft with respect to
:  revenue recognition; failure to provide adequate reserves for uncollectible accounts receivable; capitalizing, instead of expensing, software and advertising costs; and improper accounting for stock option compensation and the related tax benefit.

Immediately following the allegations against Midisoft, the complaint alleged that CLARK NUBER: "falsely represented, in Midisoft's 
annual form 10-K which was filed *** for the year 1993
, that Midisoft's financial statements complied with *** Generally Accepted Auditing Standards during the course of the audit";
 "actively and directly participated in this plan of deception by falsely 
issuing unqualified opinions on Midisoft's financial statements for the period ending December 31, 1993, by continuing that fraud throughout the Class Period, and by participating in the development of the accounting treatments essential to the irregularities in Midisoft's financial statements
"; "Clark Nuber was liable "by virtue of its 
conduct related to the structuring and approval of the improper tax accruals
 related to Midisoft's stock option plan"; "Clark Nuber [was] also liable *** due to its performance of a 
grossly negligent audit for the year 1993, as well as a negligent review for the March 31, 1994 financial statements which were included in the prospectus for the secondary offering
"; and "
Clark Nuber personnel actually helped craft the financial statements and related notes, and assisted in developing the strategies for accounting
 for Midisoft's stock option plan, 
which in turn had become
 in part, 
the basis of Midisoft's quarterly reports
 to shareholders and press releases containing financial information."  (Emphasis added.)

As Continental correctly points out, Clark Nuber's June 3, 1994, notice letter stated that Clark Nuber might be sued based upon its 
financial statements in connection with Midisoft's second public offering, and it is clear that 
"Clark Nuber [was] only being charged with wrongful acts committed during the preparation of the year-end 1993 audit and the review of the March 31, 1994 financial statements which were allegedly included in the prospectus for the secondary offering."  With respect to the 1994 second and third quarter statements, Clark Nuber was also charged with "participating in the development of the accounting treatments essential to the irregularities in Midisoft's financial statements during the 1993 audit."  Accordingly, all of the negligence alleged by the 
Smith
 claimants "arose out of" the four improper accounting treatments developed by Clark Nuber and were based on the alleged wrongful acts 
initially
 committed by Clark Nuber during the year-end 1993 audit and the first quarter review allegedly included in the prospectus for the secondary offering.  We therefore find, based on Coregis' pertinent policy provision, Clark Nuber's notice letter and the allegations of the 
Smith
 complaint, that Coregis' policy covered all of the 
Smith
 claims, as the trial court properly found in granting Continental summary judgment.

We further find Coregis' argument without merit that the 
scope of coverage under its policy of the 
Smith
 claims can only be determined based on Clark Nuber's subjective intent and awareness of potential claims at the time of Clark Nuber's notice letter and that the letter only notified Coregis of a potential claim based on the ACS and Rex Tec contracts.  Coregis admitted during oral argument that no case law exists supporting its "intent and awareness" argument, and our research reveals none.  
We find 
Burdette
, however, instructive on the issue of Coregis' narrow interpretation of the notice letter in the present case.

In 
Burdette
, which involved a claims made policy, the insurer argued that letters to others and minutes of meetings, made after the insured had provided the insurer with a letter giving it notice that "certain former officers and directors" of the insured might be sued, was evidence that the insured "intended" to only sue eight former officials, rather than all of those named in the subsequently filed complaint against the officials.  
Burdette
, 718 F. Supp. at 655.  In rejecting this argument, the 
Burdette
 court stated that "[n]othing said at a date after the notice letter can lessen the notice given to and received by the insurer."  
Burdette
, 718 F. Supp. at 655.  The court found that the notice letter was "notice to the insurer that one, some, or all the former officers and directors might be sued," and the subsequent correspondence had no bearing on the previously submitted notice letter of which officials the insured "intended" to sue.  
Burdette
, 718 F. Supp. at 655.

In the present case, Coregis attempts to limit the scope of coverage of its policy to the ACS and Rex Tec contracts based on Rauch's affidavit, like the 
Burdette
 insurer attempted to limit its policy coverage to fewer officials of the insured based on correspondence evidencing its "intention" to do so after notice of a potential claim had been received by the insurer in 
Burdette
.
  Coregis states in its opening brief that Clark Nuber's notice letter "unequivocally referred only to two particular contracts," the ACS and Rex Tec contracts.  We first observe, however, that nowhere in Clark Nuber's letter are the ACS and Rex Tec contracts referred to; the letter states only that a question was raised "about the interpretation of relevant professional standards for the recognition of revenue."  If, assuming 
arguendo
, that Clark Nuber had "intended" to notify Coregis that the ACS and Rex Tec contracts were the sole basis for a potential claim, Clark Nuber could have specifically referred to those two contracts as the sole basis.  Instead, Clark Nuber's notice letter not only did not refer to the ACS and Rex Tec contracts, but 
further
 stated a broader notification to Coregis that the question about the recognition of revenue raised a "potential issue with respect to the financial statements audited by [Clark Nuber] for the fiscal year ending December 31, 1993, which were included in the annual SEC 10K filing" and were being used in connection with Midisoft's second public offering, as an 
additional
 basis for a potential claim.  Accordingly, Coregis was notified that the "financial statements," in their entirety, which it audited, 
as well as
 the interpretation of relevant professional standards for the recognition of revenue, might be the bases of potential claims against it.  We further observe that Coregis fails to cite to any authority in support of its conclusion that the broader potential claim regarding the financial statements should be ignored in favor of the narrower potential claim regarding the recognition of revenue.

We also observe that because Clark Nuber performed no work for Midisoft after the effective date of Continental's policy, the only work that Clark Nuber could be sued for was work performed during Coregis' policy period, as well as the subsequent effect of this work, as alleged by the 
Smith
 claimants.  Clark Nuber gave timely notice to Coregis of what the acts, errors or omissions that it was "aware" of at that time that might result in it being sued, 
i
.
e
., its financial statements and interpretation of relevant professional standards for the recognition of revenue.  Clark Nuber objectively complied with the potential claim notice provision of Coregis' policy, giving Coregis all the information it had at the time.
  See 
Mijalis
, 15 F.3d at 1335; 
Continental Insurance Co. v. Bangerter
, 37 Cal. App. 45
th
 69, 43 Cal. Reptr. 2d 374, 380 (Cal. Crt. App. 1995).  Thus, even if the ACS and Rex Tec contracts were, 
arguendo
, "intended" to be the basis for a potential claim in Clark Nuber's notice letter, which Coregis claims Clark Nuber was absolved of liability for, this alleged disputed fact does not constitute a 
material
 question of fact because the notice letter also stated the broader potential claim concerning the financial statements audited by Clark Nuber and used in connection with Midisoft's second public offering, which the 
Smith
 claimants alleged resulted in the "irregularities in Midisoft's financial statements."

We also find without merit Coregis assertion that the 
Smith
 claims were separate, multiple claims, "disparate in nature, time and character" and, thus, "not related to the recognition of revenue wrongful acts which were reported during the Coregis policy."  Coregis' policy provided that it would cover all claims "arising out of" a timely reported potential claim and, as we have discussed above, all the 
Smith
 claims arose out of Clark Nuber's work for Midisoft in 1993 and the first quarter of 1994 and, thereafter, "arose out of" the accounting treatments Clark Nuber had put into place.

 In light of our holding, it is unnecessary to address Continental's contention, which Coregis argues Continental only made in a footnote in its motion for summary judgment and was not argued before the trial court, that Coregis' "related acts" policy provision supports Continental's argument that any of the 
Smith
 claims not specifically referred to in Clark Nuber's notice letter were covered under Coregis' policy by virtue of the "related acts" provision.  Based on 
the 
Smith
 allegations, 
all
 of the 
Smith
 claims against Clark Nuber clearly arose out of the work Clark Nuber initially performed for Midisoft in 1993 and the first quarter of 1994 and thus were, without question, related to that initial conduct, which was first timely reported to Coregis in Clark Nuber's notice letter during Coregis' policy period.

Based on our holding that Coregis' policy solely covered all of the 
Smith
 claims, we only briefly respond to Coregis' argument that the trial court erred in denying its motion for "partial summary judgment" based on the court's mistaken belief "that only one policy or the other policy could cover the 
Smith
 settlement, [thereby] failing to recognize the possibility that both policies could cover the settlement."  Coregis argues that Continental's policy provided coverage for the 
Smith
 settlement because: (1) Continental was notified of the 
Smith
 claims during Continental's policy period; (2) genuine issues of material fact existed whether Coregis' policy covered 
any
 portion of the 
Smith
 settlement; (3) a question of material fact existed whether Exclusion O of Continental's policy applied; and (4) Coregis' and Continental's policies provided "concurrent" coverage, and an allocation of the settlement between Coregis and Continental should have been made or a pro rata allocation pursuant to the limits of liability of the respective policies.

With respect to Coregis' first and second arguments, while the fact that the 
Smith
 claims were made during Continental's policy period, the basis for the 
Smith
 claims, as stated above, was Clark Nuber's work for Midisoft in 1993 and the first quarter of 1994, prior to the effective date of Continental's policy, that was timely reported to Coregis during its policy period, which arose out of the accounting treatments put in place by Clark Nuber and subsequently used by Midisoft during the "Class Period," thereby covering all of the 
Smith
 claims.  Also, as discussed above, Coregis' argument that Clark Nuber "intended" to notify Coregis of a potential claim concerning the ACS and Rex Tec contracts only, pursuant to Rauch's affidavit, did not constitute a 
material
 question of fact.

In its third argument, Coregis asserts that Clark Nuber was not aware and could not have foreseen the 
Smith
 claims at the time of Clark Nuber's notice letter.  Coregis relies on Rauch's affidavit which stated that Clark Nuber was not aware of, nor could have foreseen the potential claims for which it might be sued, other than the ACS and Rex Tec contracts.  Coregis therefore maintains that a 
question of fact existed whether Continental's policy applied.  Coregis also asserts that Continental was required, but failed, to present any evidence which established that Exclusion O of Continental's policy precluded coverage for the entire 
Smith
 settlement.

We reject Coregis' arguments in light of our holding above, and find, as Continental argues, that its policy was irrelevant regarding the 
Smith
 claims.  We also briefly note that the cases Coregis relies upon in support of its argument are distinguishable.  In 
Graman v. Continental Casualty Co.
, 87 Ill. App. 3d 896, 409 N.E.2d 387 (1980), the court found that the insurer was not required to defend or indemnify an insured under a claims made policy because the insurer was not notified of the claim until more than three years after the expiration of the policy at issue.  Here, Clark Nuber sent its notice letter to Coregis during the Coregis policy period.  
Stiefel v. Illinois Union Insurance Co.
, 116 Ill. App. 3d 352, 452 N.E.2d 73 (1983), and 
Mann v. Mann
, 133 Ill. App. 2d 552, 273 N.E.2d 40 (1971), both involved issues of the insureds' failure to inform their insurers of their knowledge of a claim prior to the effective date of the insureds' policies.  
Here, there is no issue regarding the withholding of prior knowledge of a claim before the effective date of Coregis' policy.

Coregis' fourth argument, that the parties' policies provided "concurrent" coverage and an allocation or pro rata allocation of the settlement should have been made between them, is without merit because the parties' policies were consecutive, not concurrent, policies.
(footnote: 2)  Concurrent policies are those which exist for the same policy period or overlap in their policy periods.  See 
St. Paul Fire & Marine Insurance Co. v. Vigilant Insurance Co.
, 919 F.2d 235, 241 (4
th
 Cir. 1990).  Here, Coregis' policy ran from June 4, 1993, to June 4, 1994, whereas Continental's policy ran from June 4, 1994, to June 4, 1995.  Accordingly, the two policies were consecutive policies.  Since Coregis' and Continental's policies were consecutive policies, and Clark Nuber's notice of a potential claim with respect to the 
Smith
 claims was made during Coregis' policy period, Coregis' policy covered the entire settlement because all of the claims  first arose out of Clark Nuber's initial conduct in 1993 and the first quarter of 1994.  Therefore, Continental's policy did not cover any portion of the settlement since none of Clark Nuber's conduct, which was the basis of the 
Smith
 claims against Clark Nuber, occurred during Continental's policy period.

We briefly note that the cases Coregis relies on in support of its argument are distinguishable.  
Universal Underwriters Insurance Group v. Griffin
, 287 Ill. App. 3d 61, 677 N.E.2d 1321 (1997), 
involved concurrent policies--a personal automobile policy and a garage policy.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 283 Ill. App. 3d 630, 670 N.E.2d 740 (1996),
 involved coverage by four commercial general liability policies for a corporation that discharged polychlorinated byphenyl contamination while manufacturing outboard motors.  The 
Outboard Marine
 court held that the contamination constituted a continuous injury that triggered coverage under more than one policy.  Similary, 
Insurance Co. of North America v. Home & Auto Insurance Co.
, 256 Ill. App. 3d 801, 628 N.E.2d 643 (1993), involved a continuous injury of lead posioning over a period of time and equal contribution from three successive policies was held appropriate.  In the present case, however, the professional liability policies at issue here cover claims based on the time of the notice of a potential claim, not on the time of injury, as in 
Outboard Marine
 and 
Home & Auto
. 

We further note that during oral argument before this court, Coregis stated that it had discovered a recent case holding that consecutive claims made policies can cover the same claim.  We told Coregis that it could file a motion to cite supplemental authority.  Coregis did not file a motion, and our research reveals no such case.
(footnote: 3)  We therefore find that the trial court properly denied Coregis' motion for "partial summary judgment," which motion, based on our review of the record, was properly treated by the trial court as a motion to reconsider.   In light of our holding, we need not address Continental's arguments that Coregis was estopped from denying coverage and that Coregis had waived all coverage defenses.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed. 

THEIS and HALL, JJ., concur.

FOOTNOTES
1:
The parties disagree with respect to whether Illinois or Washington law applies, but agree that it is irrelevant because the applicable case law on the issues raised in the present case is the same throughout the United States.

2:
In almost identical footnotes in its motion for partial summary judgment and  opening brief in this court, Coregis suggests that because Continental seeks contribution from Coregis for the 
Smith
 settlement, Continental would have to be a concurrent insurer for the 
Smith
 claims or otherwise Continental is not entitled to contribution from Coregis.  In Coregis' subsequently filed petition for rehearing, it maintained that it "specifically" raised this argument in its motion for partial summary judgment.  However, contrary to Coregis' assertion, it did not, beyond its footnote in its motion, make this "contribution argument" in the trial court, and the court did not consider it.  Instead, Coregis consistently argued that the 
Smith
 settlement "should be allocated between [Continental] and Coregis *** based on the amounts paid by the parties at the time of the settlement" or, "[a]lternatively, the settlement should be reallocated between [Continental] and Coregis on a pro-rata [
sic
] basis pursuant to the limits of liability contained in their respective policies."  Accordingly, just as Coregis suggested in its brief before us that we should not consider Continental's "related acts" argument because Continental did not argue it in the trial court and only "advanced" it in a footnote in its motion for summary judgment, we find that Coregis waived its "contribution argument." 
 
Lake County Trust Co. v. Two Bar B, Inc.
, 238 Ill. App. 3d 589, 598, 606 N.E.2d 258 (1992) ("[A]n appellate court will not consider on review theories which were not presented to the trial court"); 
Srivastava v. Russell's Barbecue, Inc.
, 168 Ill. App. 3d 726, 732, 523 N.E.2d 30 (1988) ("An issue not presented to or considered by the circuit court cannot be raised on review for the first time").

3:
In Coregis' petition for rehearing, it argues that this court "ruled that [Continental's] policy was 'irrelevant' based on the argument that two claims made policies cannot cover the same loss."  Coregis cites to two cases for the proposition that "two claims made policies can cover the same risk, where one policy is triggered by the a [
sic
] notice of a potential claim, and the subsequent policy is triggered when the actual claim is made during the term of the subsequent policy."

We first observe that nowhere in this court's opinion do we state that two claims made policies can never cover the same loss, but rather only that Coregis failed to cite to any authority in support of its argument otherwise.  Additionally, given the impropriety of Coregis' citation in its petition for rehearing of two cases not presented to this court prior to our decision, contrary to Supreme Court Rule 341(e)(7), which states, in part, that an appellant has "a positive duty to support each point made in its appeal with contentions *** [and] citation of authorities" and a point not argued may not be raised in a petition for rehearing (134 Ill. 2d R. 341(e)(7)), the facts of this case, and because the two cases are distinguishable from the present case, we need not make such a determination.

In 
Board of Education v. New Jersey School Boards Ass'n Insurance Group
, 719 A.2d 645 (N.J. Super. A.D. 1998), the court found that a consecutive insurer's claims made policy provided coverage for a federal claim based on the court's determination that the federal claim was a "new and different" claim from a previous State administrative claim, notwithstanding that both claims were based upon common facts, because the federal claim alleged wrongful acts committed after the conclusion of the State administrative proceeding and pled "a conglomeration of civil wrongs, not only under the federal education laws and disability laws, but also under the federal constitution and the Civil Rights Act."  
Board of Education
, 719 A.2d at 650.  In the present case, the complained of conduct by Clark Nuber, after the effective date of Continental's policy, was not "new" conduct, but rather was related to, and arose out of, the conduct first reported during Coregis' policy period.

In 
Coregis Insurance Co. v. Camico Mutual Insurance Co.
, 959 F. Supp 1213 (C.D. Cal. 1997), the court found that a consecutive claims made policy, issued by Coregis and in effect when a complaint was filed, did not provide coverage where the insured failed to inform  Coregis of the claim prior to the effective date of its policy, and the insured knew or should have reasonably foreseen that a claim would be made against him.  Accordingly, the 
Camico
 court held that the claims made policy issued by Camico solely covered the claim.  Here, Clark Nuber reported a potential claim to Coregis during Coregis' policy period, and all claims made after the expiration of Coregis' policy and the effective date of Continental's policy were related to the potential claim.  Coregis' policy clearly covered the 
Smith
 action claims based on Coregis' policy provision that  "[a]ny CLAIMS 
subsequently made
 against any INSURED arising out of [the reported potential claim] *** shall be considered to have been 
made
 and reported during the POLICY PERIOD."  (Emphasis added.)